Stayton, Associate Justice.
This suit was brought by the Texas & Pacific Railway Company and by W. T. Walter and George D. Krumbauer, in the district court for Marion county, *650 against James P. Russell and Robert B. Epperson, as executors of the last will of Ben H. Epperson, deceased, and against Marian Epperson, the widow, and Joannie Egell, Robert B. Epperson, Shields Epperson, Ben Epperson and James Rodgers Epperson, children of Ben H. Epperson, the petition alleging that Ben Epperson and James Rodgers Epperson were minors without guardians.
The purpose of the suit was to remove cloud from the title to many sections of land situated in Clay, Wilbarger, Baylor and Dimmitt counties. The land was claimed by the Texas & Pacific Railway Company, as the assignee of the Memphis, El Paso & Pacific Railroad Company, and the defendants claim the land from the sanie common source. Walter and Krumbauer had no interest in the land, other than such as the fact that the land had been mortgaged to them by the Texas & Pacific Railway Company, gave.
It appears that lien creditors of the Memphis, El Paso & Pacific Railroad Company, in July, 1870, filed against that company a bill in equity in the Circuit Court of the United States for the western district of Texas, alleging its insolvency and praying, among other things, that all of its assets be placed in the hands of a receiver, whose appointment was asked. On July 6, 1870, a receiver was appointed, and all the assets of the corporation were, by an order made in chambers, placed in his possession. The order appointing the receiver prescribed his duties and powers, and, among other things, empowered him to sell, under direction of the -court, all the property placed in his possession and custody. The receiver, having made a report to the court that appointed him, of his acts, the same were approved by an order of date May 29, 1879, which directed the receiver to sell and convey unto the Texas & Pacific Railway Company all the lands in his possession and control, within the State of Texas, at a specified price. This order also directed the receiver to execute deeds for the land to the Texas & Pacific Railway Company without further application to the court; - the particular land in controversy to be conveyed to that company when the title to it was made acceptable to the purchasing company. The report of the receiver, on which the order above referred to was made, is not contained in the record, but the order refers to it, and the inference to be drawn from the order is, that the report showed an offer or bid of the Texas & Pacific Railway Company for all the land, made at a sale formerly ordered. In pursuance of the *651 order, the receiver, on June 27, 1879, conveyed the lands in controversy, with other lands, to the Texas & Pacific Railway Company, and under that deed it now asserts title.
James B. Donoho brought an action in the district court for Lamar county against the Memphis, El Paso & Pacific Railroad Company, to the July term, 1871, of "that court, to recover debts not secured by lien, and in the petition he stated that the assets were in the hands of the receiver appointed by the circuit court of the United States, and prayed that he might be made a defendant. Service appears to have been accepted and citation and summons,, waived by an attorney for-the Memphis, El Paso & Pacific Railroad Company, and also for the receiver; but the record shows that this was done without authority from the receiver. On August 9, 1871, a judgment by default was rendered in favor of Donoho against the railroad company, on which execution issued as early as May, 1872, under which sales were made through which the defendants assert whatever claim they have. The sheriff’s deed to B. H. Epperson, who was the purchaser, bears date July 23, 1873.
On April 29, 1880, the executors, Russell and Epperson, and Maurice and E. S. Epperson filed an answer to the merits, and on January 16, 1883, an agreement was filed by attorneys assuming to represent the defendants and plaintiff, in which it was agreed that all the defendants would answer at the term then pending and that judgment should be rendered in favor of the plaintiff in accordance with the prayer of the petition; the attorneys assuming to represent the defendants therein declaring that they “now enter appearance for them.” On the same day that agreement was filed, a judgment was entered in accordance with it, but on motion of one of the executors the judgment was set aside on the next day on the ground that the attorneys Rad no authority to make the agreement.
The executors ceased to act, and George T. Todd was appointed administrator de bonis non, and the latter filed an answer on May 18, 1886. In that answer he urged that the said suit should abate because not brought in the county in which any part of the land was situated. Ro answer was filed for the two minor children of B. H. Epperson until June 6, 1887, when their mother, as their legal guardian, filed an answer for them, in which she urged the same matters as were urged by the administrator, Todd. The court below held, that the pleas to the jurisdiction of the district court for Marion county were insuf *652 ficient, and refused to abate the suit. This ruling is assigned as error.
Todd was but the representative of the estate of Epperson, and as the executors had pleaded to the merits long before he pleaded matter in abatement, he could not urge any matter which by their course of pleading had been waived, and the same is true as to any of the other defendants, who were but the representatives of a deceased defendant, who had waived the right to insist upon such a plea. As the minor defendants could only appear by guardian, it is clear that the agreement of an attorney could not be made to operate as an appearance for them.
At the first term at which the minors, or any one in their behalf, filed any plea in due order of pleading through their, guardian, they urged in abatement the fact that none of the land in controversy was situated in the county in which the suit was brought. The eleventh subdivision of article 1198, Revised Statutes, provides that “suits for the recovery of lands or damages thereto; suits to remove incumbrances on the title to land; suits to quiet the title to land, and suits to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie.” This provision of the statute regulates and determines the venue in this case, and the court below should not have proceeded to adjudicate the rights of the parties in Marion county, where any one necessary defendant objected in proper time and mannerito a trial of the cause in a county other than that in which the land, or a part of it, was situated.
Were the minor defendants necessary parties to the suit? Executors and administrators are authorized to maintain suits such as this without joining the heirs of the estates they represent, and judgments rendered against them will be conclusive against the heirs, unless set aside for fraud or collusion on the part of the executor or administrator. (Rev. Stats., art. 1201.) The statute, however, provides that “in every suit against the estate of a decedent involving the title to real estate, the executor or administrator, if any, and the heirs shall be made parties defendant.” (Rev. Stats., art. 1202.) This was such a suit, the heirs of B. H. Epperson were necessary parties to it, they objected at proper time and in the proper manner to the trial in Marion county, and for the error of the court in overruling their objection the judgment will have to be reversed.
There are other matters presented by the assignments of error, which, in view of further litigation in reference to the subject *653 matter of this suit, it is deemed proper to consider on this appeal. It is urged,that the receiver could not pass title to the-land in controversy, even under the orders of the court that appointed him, unless the legal title to the land had been assigned to him by the railway company, whose estate had been placed in his possession. There is no doubt that it is usual in some jurisdictions for the court appointing a receiver to direct and require the person or corporation whose estate is so placed, to make an assignment to the receiver; but this is a matter formal in character and having no substantial .effect upon the title, as is evidenced by the ruling that no re-assignment is necessary to reinvest the assignor, in such case, with the title when the • purposes for which the suit in which the receiver is appointed are accomplished without a sale of the property.
We apprehend that no assignment is necessary to entitle the court appointing a receiver to pass title through a sale made by him under its orders.
It is not a question whether the receiver has title, but whether the court has power to pass the title of the person or corporation whose estate is placed in the hands of a receiver by sale made by him under its orders. The debtor whose property is attached or otherwise placed in custodia legis, need not to make an assignment to enable a court, through its ministerial officer, to make a sale that will pass the title, when the property is charged with a lien before, or by the act of seizure. A receiver is but the officer of the court that appoints him, and the property placed in his possession is regarded as being in custodia legis.
Sales, whether made on seizure under execution issued after judgment, or on seizure before final judgment on decretal orders which a court has power to make, are held to pass title to the property sold, not because the ministerial officer has title, but because the law casts upon him, when acting under its authority, the power to make a sale which will bind the owner as fully as would his own act.
That the property in controversy was in the custody of the court which directed the receiver to make the sale under which the Texas & Pacific railroad company claims it, can not be questioned; and so was it at the time it was seized and sold under the execution which issued in favor of Donoho. So far as the record shows, Donoho had no lien on the property placed in the hands of the receiver, and the sale made under the execution issued in his favor, could not pass title superior to that which *654 passed by the sale made by the receiver. In order that the court having custody of property, through its receiver, may properly administer it, it is held that no sale of the property under an execution in another case, or from another court, can be allowed unless under leave of the court having the custody; and when a sale was thus attempted without leave of court, it was held void, and that no title passed to the purchaser. (Wiswall v. Sampson, 14 Howard, 52; Edwards v. Norton, 55 Texas, 410.)
It is urged that the Texas & Pacific Railroad Company had'no power under its charter to purchase and hold the lands in controversy, and that, therefore, it is not entitled to the relief which it seeks, even if it be admitted that the sale by the receiver would have passed title to a purchaser having capacity to buy and hold real estate. "We deem it unnecessary to consider whether the act of Congress incorporating the Texas & Pacific Railway Company or the acts of the Legislature of this State incorporating the Southern Transcontinental Railroad, and recognizing the consolidation of those companies confers upon the former the power to hold lands other than such as are reasonably necessary to the maintenance and operation of its road; for be this as it may, we are of the opinion that the right to question its holding of lands other than such as are so necessary rests with the State alone.
The rule is thus stated in Hational Bank v. Mathews, 98 United States, 628, “where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose. (Leazure v. Hillegas, 7 Sergt, & R., 313; Goundie v. Northampton Water Company, 7 Pennsylvania State, 233; Runyon v. Coster, 14 Peters, 122; The Banks v. Poitiaux, 3 Rand., Va., 136; McIndoe v. City of St. Louis, 10 Missouri, 577.)” The following authorities are to the same effect: Cowell v. Springs County, 100 United States, 56; Grant v. Henry Clay Coal Company, 80 Pennsylvania State, 218; Shewalter v. Pirner et al., 55 Missouri, 233; Morawetz on Private Corporations, 116.
While this is true, it is held that a corporation created for public purposes has no power by sale to transfer its franchise, or the property necessary to the exercise of it, without legislative permission. (Railroad Company v. Winans, 17 Howard, 30; Thomas v. Railroad Company, 101 United States, 71; Black v. Canal Company, 22 New Jersey Eq., 399, and cases cited; Mora *655 witz Priv. Corp., 485, 490; Green’s Brice’s Ultra Vires, 236, 398, and authorities cited in notes.) This rule was recognized in Railway Company v. Morris, 67 Texas, 692, in which it was held that a railway company could not relieve itself from liability for an injury done to an individual by an attempted transfer of its road without legislative permission.
Such a transaction is objectionable in the absence of legislative permission, not only because ultra vires, but for the further reason that it is illegal because contrary to public policy.
The right and power of such a corporation to dispose of the property necessary to the exercise of its franchise, and the right of such a corporation to hold property conveyed to it which by the terms of its charter it is not authorized to purchase, so far as individuals are concerned, stand on different grounds. In the one case the individual has no interest in the question, while in the other it is his right to have the corporation to discharge its duty to the public; and, for any failure to do so, by which he receives injury, he may look to the corporation and its property for compensation, notwithstanding the corporation has attempted to divest itself of its corporate existence, franchise and property.
Title to the property in question passed to the Texas & Pacific Railway Company through the sale made by the receiver, which is superior to any right that could have been conferred by the sale made under the judgment in favor of Donoho, even if the latter had been made under leave of court; for the sale made by the receiver was made to satisfy a lien existing before the receiver was placed in possession of the property, while the sale made by the sheriff under the execution was under judgment obtained pending the receivership on debt not shown to have been secured by lien. If there be any facts which would lead to a different declaration of the rights of the parties, it is not shown by the record before us.
The mortgagees who were made parties plaintiff, were not necessary, if proper parties to the suit, and a nonsuit by them could not affect the right of the railroad company to an adjudication of the question before the court.
The judgment of the district court will be reversed, but, in view of the disposition made of what now seem to be the controlling questions in the case, it will be remanded, and the guardian of the minor defendants, if she see proper, may waive the matter in abatement and have the controversy settled in this *656 suit; or she may insist upon their right to have the suit brought and tried in a county in which the land, or a part thereof, may - be situated, as she may deem best for the interest of her wards. In the latter event, the suit should be dismissed, for the petition shows that the suit was not brought in the proper county.
Opinion delivered October 22, 1887.
It is ordered that the judgment be reversed and the cause remanded.

Reversed and remanded.

Associate Justice Gaines not sitting.