### J. A. GILLEAN ET AL. v. CITY OF FROST.

Decided February 6, 1901.

**1.—Dedication to Public Use—Park and Lake.**

Where the owner of a tract of land divides it into blocks, lots, streets, and alleys, with reservation of a lake and park shown on the plat, which was duly recorded, and in his sales of the lots repeatedly declares that the lake and park are reserved for the public use, this is a sufficient dedication of them to such purpose.

**2.—Same—Deed Not in Conflict with Dedication.**

Where such owner subsequently conveyed the land covered by the lake to a railroad company, with condition that the lake should be maintained thereon, and a reservation of the right of the public to use the water, in connection with the company, this did not declare a trust in the company in favor of the public, but was merely declarative of a benefit already set apart to the people of the town.

**3.—Same—Acceptance of Dedication.**

Where, immediately after the dedication of the park and lake to public use, the inhabitants of the town entered upon their use and continued such use until they were interfered with by appellants, claiming adversely, this constituted an acceptance, and the dedication becomes irrevocable.

**4.—Same—Subsequent Incorporation of Town.**

It was not necessary that the town corporation should have been created at the time of the dedication, and the right by the dedication passed to the corporation when it was created.

**5.—Same—Limitations Not Set in Motion—Quitclaim.**

Where the original owner of the townsite tract conveyed to a land company all the unsold portions thereof, subject to his deed of the lake to the railway company, containing a reservation of the right of the public to use the lake, and the land company then conveyed the lake tract to appellants by quitclaim, such latter deed did not of itself suffice to put in motion the five years statute of limitations in appellants' favor.

**6.—Same—Lake May Be Dedicated.**

A lake may be dedicated to the public use, and is comprehended under the term "grounds" as used in the article of the statute which provides that no right shall be acquired by adverse possession and limitations to any street, sidewalk or grounds belonging to or dedicated to any city, town or county. Rev. Stats., art. 3351.

**7.—Same—Taxation by Town Not Impairing Dedication.**

The fact that after the quitclaim deed of the lake tract to appellants, the town corporation assessed taxes thereon against him and collected the same, did not impair the rights acquired by the dedication.

**8.—Same—Limitations—Recognition of the Public's Right by Attempt to Lease.**

Where appellants, after the quitclaim deed of the lake tract to themselves, attempted to lease the property from the people of the town, this was such a recognition of the right by dedication as prevented the running of limitations in appellants' favor prior to that time.

**9.—Same—Judgment Sustaining Dedication Too Broadly.**

In an action by a town on behalf of its citizens to recover the use of a park and lake dedicated to the public, a judgment in favor of the town which also adjudges that it should not deprive the defendants "or other persons" of the proper or reasonable consumption of water from the lake, is erroneous in so far as it relates to the "other persons," since these latter were not parties to the suit, nor their rights in any way involved.

Appeal from Navarro.   Tried below before Hon. L. B. Cobb.

*Simkins & Mays,* for appellants.

*Frost, Neblett & Blanding,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was institued by the appellee against J. A. Gillean and W. C. Gillean to try title to land in the western part of the town of Frost, known as the "Lake," containing thirty-two acres of land, and the "City Park," containing seven acres of land. They pleaded general denial, nonjoinder of parties plaintiff, not guilty and limitation of three, five and ten years, and prayed that their warrantors, W. B. Jones, R. A. Mitchell, J. A. Tullos, L. A. Morgan, and J. H. Galbreath, be made parties defendant, and that in case of their eviction they have judgment over against them.   The case was tried by the court without a jury, and judgment was rendered "that the plaintiff,

the city of Frost, do have and recover possession of said premises from the defendants for the benefit of the public use for all purposes and uses as a pleasure and recreation grounds, said lake being a part and parcel of said premises, and to be used in connection with said park, and said premises shall be held and controlled, and its use regulated by said municipality, plaintiff herein, for all purposes of recreation, pleasure, diversion, and entertainment, the full possession of the surface thereof being adjudged and decreed to the plaintiff, and that such use in the plaintiff shall not deprive the defendants or other persons from the proper or reasonable consumption of water from said lake." It was further decreed that the Gilleans take nothing by their cross-action as against any of the other defendants except W. B. Jones, against whom they recovered judgment for $240.

In 1887 the St. Louis, Arkansas & Texas Railway Company was built, and passed over a tract of 150 acres of land off the Noah Kessiah survey in Navarro County, owned by Bryan T. Barry. A station was located on the land, and the land was surveyed into blocks, lots, streets, and alleys, and a certain piece of land containing about seven acres was designated as the "City Park," and lying adjacent to it there was another designation of the "Lake," containing from thirty to fifty acres of land. In passing across Barry's land a creek was crossed by the railroad which, by an agreement between the railroad company and Barry, instead of being crossed by a bridge, was crossed on a solid embankment which dammed up the creek and flooded the land and formed the lake. After the lake had been formed by the dam across the creek, late in 1887 a public sale of the lots into which the land had been subdivided took place. The sale was superintended by Barry, and maps of the proposed town, which was named Frost thereon, were distributed among the numerous persons who were present to buy. On those maps the streets, blocks, lots, and the "City Park" and "Lake" were designated, and during the sale it was repeatedly declared by the auctioneer and Barry that the lake and park were for public use. Afterwards private sales were made by Barry, and in each of them the right of the citizens to the use of the lake and park was held out as an inducement to purchase. On April 17, 1888, Barry executed a deed to the railway company in which was the following recital:

"In consideration of $2.50 and for the benefits to accrue to me and my property by the erection and maintenance of a lake of water, herewith sketched, situated at Frost, a station on the Corsicana & Hillsboro branch of the "Cotton Belt" railway, in Navarro County, I convey (the land covered by the lake), with leave to overflow it with water for the supply and use of said company in the operation of its railway and such other uses and purposes for the benefit of said company and its property, and also for the benefit of the town of Frost and its business, as they may desire to put same to, from time to time.

"It is understood, however, that the citizens of the town who purchase lots from me, and to whom I may, from time to time, give my written

consent thereto, shall have the right to use water for manufacturing purposes out of said lake, so as not to reduce the quantity of water for the immediate and prospective use of the railway company for all purposes of their use. On failure for a year to maintain the lake, the use of the land shall revert to me and my heirs, and this conveyance stand for naught.

"To have and to hold the premises, with all rights, appurtenances, and privileges, to the said railroad, its heirs and assigns forever.

"I also reserve the right to stock said lake with fish, and to use same to angle therein, so as in no way to interfere with said uses of said railway company."

The town increased in population, the lake was stocked with fish, and it and the park were used by the people as a place of public resort, and use of them was untrammeled until some time in the latter part of 1892 or early part of 1893, when W. B. Jones, who was in possession, charged an admittance to the lake and park. He had prior to that time fenced the premises in controversy over the protest of many citizens. In December, 1889, Barry executed a deed to Mitchell, Morgan and others, composing a land company, conveying property described as follows: "All that certain land situate at Frost in Navarro County, in one body, and out of one survey, to wit: 'The Noah Kessiah survey, and described in two parcels, as follows: One hundred and thirty acres, * * * being the same land subdivided into lots and blocks and upon which the town of Frost is situated, except the lots in certain blocks which I have conveyed to various parties, and two lots in block 16 for school purposes, * * * and subject to the conveyance of the right-of-way reservation, depot grounds, section house, and pond of water and water privileges, heretofore made by me to the St. Louis, Arkansas & Texas Railway Company. * * * It being my intention to hereby convey the lots and land, and privileges connected therewith, owned by me on the said Noah Kessiah survey.'" In 1890 W. B. Jones erected waterworks, using the lake for a water supply, having rented the lake and park from the land company. In October, 1892, the land company, by quitclaim deed, conveyed the lake and park to Jones. The park and lake were fenced by Jones after his purchase. On June 7, 1893, the town of Frost was incorporated, the lake and park being within the corporate limits, as well as all the 150 acres that had been subdivided and platted by Barry. The plat of the town of Frost was placed on record in Navarro County in 1887. On March 24, 1899, W. B. Jones conveyed to John A. Gillean the "City Park" and the "Lake," including the machinery and appliances described as "waterworks." In 1896 Jones endeavored to lease the property from the citizens of Frost, but failed. This was done after he had been advised by his attorney that he had no title to the land. Jones paid taxes on the premises after he bought them.

The evidence established conclusively that the park and lake were dedicated to the public use. It was clearly the intention of Barry, the

owner of the land, to set apart for the public use the lake and park. This intention was evidenced by the division of the land into blocks, lots, streets, and alleys and reservation of the lake and park, on the plat which was duly recorded, and by his repeated declaration that they were reserved for the public use, and the public made use of the property. Oswald v. Grenet, 22 Texas, 94; Lamar County v. Clements, 49 Texas, 347; Railway v. Sutor, 56 Texas, 496; Ranthum v. Halfman, 58 Texas, 551; Wolf v. Brass, 72 Texas, 133; San Antonio v. Grandjean, 91 Texas, 430; Dill. Mun. Corp., sec. 645.

Not only did Barry, by preparing and recording the plat and by repeated declarations, set apart the premises to the public use, but in the deed afterwards made to the railroad company he recognized the dedication, and in effect withheld it from being interfered with by the grantee. Whether at the time the dedication was made, it was known to the public that the railroad company had erected the dam and created the lake, and that the dedication was incumbered with the use by the railroad company of the water, and whether the city of Frost is bound by the deed to the railway company, can not figure in this case, because there is no conflict between the citizens of Frost and the railway company. It was not interfering with the public in their use of the lake, and was in no way concerned in the litigation between the appellants and appellee, and was not therefore a necessary nor proper party to the suit. The deed can not by reasonable construction be held to declare a trust in the railway company in favor of appellee, but is merely declarative of a benefit already set apart to the people of the town.

Immediately after the dedication of the premises to public use, the inhabitants of the town entered upon the use of it, and continued its use until they were interfered with by appellants, and such use constituted an acceptance. As said by the court in Wolf. v. Brass, above cited: "It is sufficient if there has been some act or declaration upon the part of the owner of the fee indicating unequivocally his purpose to dedicate, and the public has used the property for the purposes to which the act or declaration of the proprietor indicates it was his intention to dedicate it." And in the case of the City of San Antonio v. Grandjean, 91 Texas, 430, it is said: "Yet we understand the authorities to agree, that if the tender be unequivocal and the easement be used by the public, even without formal acceptance by the property authority, the dedication becomes irrevocable."

There is authority for the proposition that, as against the owner of the fee, a dedication of land for streets and highways may be complete without any act or acceptance on the part of the public, but in order to charge a city with the duty to repair, or make it liable for damages sustained by a defect, there must be an acceptance by the proper authorities. Price v. Breckenridge (Mo.) 5 S. W. Rep., 20; Cook v. Harris, 61 N. Y., 448; Holdene v. Trustees, 21 N. Y., 474. The doctrine of dedication as applied to streets has been extended to public squares,

and the fact of dedication is established in the same way in both cases. Dill. Mun. Corp., sec. 644.

It was not necessary that the corporation should have been created at the time of the dedication, but it would pass to the corporation when it was created. City of Llano v. County of Llano, 5 Texas Civ. App., 132; Price v. Breckenridge, above cited; New Orleans v. United States, 10 Pet., 661; Pawlet v. Clark, 9 Cranch, 292. The owner could not reclaim the premises while awaiting the existence of a grantee capable of taking it, if it remained in public use. There was, however, no attempt upon the part of Barry to reclaim the premises, but on the other hand, he at all times recognized the right of the public, both in deeds executed by him and in his other acts and conversation. Title to the lake and park was never claimed by anyone until 1896, when Jones failed to obtain a lease from the citizens.

In the deed from the land company to W. B. Jones, the title conveyed was subject to all privileges granted by Barry to the land company, and it was provided that he was not to charge exorbitantly for water, or to refuse water for manufacturing or other purposes. A reference to the deed from Barry to the land company discloses this recital: "This deed is made subject to the conveyance to the right of way reservation and depot grounds for the section house, and also for the pond of water, and water privileges, heretofore made by me to the St. Louis, Arkansas & Texas Railway Company." In the last conveyance referred to the right of the public in the lake is recognized. The deed from the land company therefore did not attempt to convey any rights to Jones antagonistic to those named in the conveyance from Barry to the railway company. That deed did not, therefore, of itself start the statute of five years' limitation, and it was not until after the incorporation of Frost that any claim was set up by Jones adverse to the use by the public of the premises, and even as late as 1896 Jones recognized the claims of the citizens to the premises by endeavoring to obtain a lease of them.

We do not agree with the contention of appellant that a lake could not be dedicated to the public use, and we are of the opinion that within the provisions of article 3351, Revised Statutes, would be included a body of water dedicated to public use. It can not be doubted that an artificial pond or lake would be comprehended under the term "grounds" used in the statute. The dedication of the park and lake was made at one and the same time, one being adjacent to and forming with the other one property set apart to public uses, and it is conceded that if the lake was smaller than the park and included in it, the dedication could take place, but we do not think the relative sizes of the two can exercise any influence on the designation, because, as before stated, if the whole premises were covered with water, the dedication would attach.

The suit was instituted by the appellee to recover the premises for itself, and it was decreed to the appellee to be held for certain purposes, but the judgment went further and adjudged that appellee should not deprive appellants "or other persons" of the proper or reasonable con-

sumption of water from the lake.  Who the other persons are that are to be protected does not appear in pleadings or evidence.  The city of Frost obtained judgment as representing its citizens, and there should have been no judgment protecting the people it represented from its aggressions.  There was in the case no one's interests to be protected against it, except the parties it had sued, and no adjudication as to the rights of others not parties should have been made.          '

The assessment and collection of taxes by the municipality did not impair the rights acquired by the dedication, and it did not confer any rights on appellants.  The city could not by deed have conferred any right on appellants antagonistic to the dedication, and it would seem clear that the assessment and collection of taxes, nor any like act, could have more extensive powers than a deed by the city.  The dedication was to the public, and the corporation acted as the trustee of the public in the preservation of the rights made to the public, and no acts of the corporation could estop it from performing its duty to the public in maintaining the rights the public had acquired by the dedication. Rhodes v. Brightwood (Ind.), 43 N. E. Rep., 942.

The judgment will be reformed so as to eliminate the words "or other persons," and affirmed.

*Reformed and affirmed.*

### ON MOTION FOR REHEARING.

While there is testimony to sustain the finding of this court that the deed to the railroad company was executed after the sale of the lots, it is a matter of small importance as to whether it was or not.  The suit is not as to what rights the railroad may have, but as to what the rights may be of a person claiming under Barry, who dedicated the park and pond to public uses.  Appellant can have no other or higher rights than were conveyed to his vendors by Barry.  If Barry had dedicated the pond and park to public uses, he could not have given to his vendees any rights antagonistic to those public uses.  Barry swore that he did not sell the lake or park to anyone.

We adhere to the ruling that the attempt to obtain a lease of the premises from the people of Frost was a recognition of their rights to lease. "A single lisp of acknowledgment by the defendant" of the title of the inhabitants of Frost is fatal to the plea of limitation.  Wood on Lim., 692; Railway v. Speights (Tex. Sup.), 60 S. W. Rep., 659.

The motion is overruled.

*Overruled.*