BUCHANAN v. HOUSTON & T. C. R. CO.
(No. 5501.)

(Court of Civil Appeals of Texas. San Antonio.
Nov. 3, 1915. On Motion for Rehearing Dec. 15, 1915.)

1. PLEADING ☞228—EXCEPTIONS—GROUNDS
—NEW MATTER.

Where the petition, in an action of trespass to try title, contained no allegation that plaintiff railway company was holding the land in suit for commercial purposes, the issue of the company's power to acquire title by limitation for that purpose could not be raised by exceptions.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ☞228.]

2. PLEADING ☞228—EXCEPTIONS—GROUNDS.

Where the petition, in an action of trespass to try title, does not show that the land in suit had been dedicated to public use, the issue of whether plaintiff railway company could acquire title by limitation to that character of land could not be raised by special exception.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ☞228.]

3. EVIDENCE ☞471—CONCLUSIONS OR FACTS.

The statement of a witness that he had been advised by counsel that plaintiff had a claim to the property involved in an action of trespass to try title is not his conclusion, but a statement of fact and admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. ☞471; Witnesses, Cent. Dig. § 833.]

4. APPEAL AND ERROR ☞499—SCOPE OF REVIEW—ASSIGNMENT OF ERRORS—WHEN CONSIDERED.

Objections, 'in an assignment of error, which the bill of exceptions does not show were made on the trial, are not reviewable on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. ☞499.]

5. JUDGMENT ☞678—CONCLUSIVENESS—PERSONS NOT IN PRIVITY.

Where plaintiff railway company in taking over another company did not buy any land held by it, a judgment against the selling company that it had no title to certain land is not admissible against the plaintiff in an action of trespass to try title to that land, there being no privity between the companies in that respect, although the judgment conclusively established that the land was public property.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1195–1199, 1221; Dec. Dig. ☞678.]

6. ADVERSE POSSESSION ☞113—EVIDENCE—ADMISSIBILITY—DOCUMENTARY EVIDENCE—CHARTERS.

Where a railway company, plaintiff in an action of trespass to try title, acquired no rights in land from its predecessor, but claimed its leasing of property to date from 1887, its charter, not issued until 1889, should have been admitted.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 669, 671–681; Dec. Dig. ☞113.]

7. APPEAL AND ERROR ☞1064 — HARMLESS ERROR—INSTRUCTIONS—MATTERS NOT AT ISSUE.

Where there was no evidence that a railway company, plaintiff in an action of trespass to try title, had ever had possession of the land in suit, through agents, the giving of its requested charge on the weight of evidence, which included a consideration of possession by agents, while error, was insufficient for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

8. ADVERSE POSSESSION ☞8 — POSSESSION AGAINST STATE—PUBLIC LANDS—NECESSITY OF APPROPRIATION.

Under Rev. St. art. 5683, providing that no person shall ever acquire title by limitation to any road, street, sidewalk, or grounds dedicated to public use, an instruction, in an action of trespass to try title, that unless the grounds in suit were "appropriated" by the city to public use, title by limitation might be acquired, and defendant, a citizen, could not invoke the statute as a defense, was error, since an appropriation was not necessary under the statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. ☞8.]

9. TRIAL ☞207—INSTRUCTIONS—EVIDENCE—PURPOSE.

Where a witness, in an action of trespass to try title, testified that plaintiff had always claimed the land, and that the legal department advised him that the plaintiff company had claim and right thereto, an instruction that his conflicting statements, to the effect that the company did not own the land, testified to by another witness, should be considered only upon the question of his credibility was correct, where it was no part of his duty to determine whether the plaintiff had title.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 498, 499, 501; Dec. Dig. ☞207.]

10. TRIAL ☞252—INSTRUCTIONS—TESTIMONY WITHDRAWN FROM JURY.

The refusal of special requested charges based upon testimony withdrawn from the jury is not error, since, had they been given, the jury must have given some weight to testimony not before it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ☞252.]

11. DEDICATION ☞45 — EVIDENCE — PUBLIC USE—QUESTION FOR JURY.

Evidence of one witness that land, the subject of an action of trespass to try title, was part of a public street, contradicted by another witness, who claimed it was dedicated to the plaintiff railway, in the absence of a deed showing dedication to the use of the city or the plaintiff, does not, as a matter of law, show that the land was a public street.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 88; Dec. Dig. ☞45.]

12. TRIAL ☞260—INSTRUCTIONS—SUBSTANCE GIVEN.

The refusal of a requested instruction, fully covered by the charges given, is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

13. ADVERSE POSSESSION ☞116—INTEREST IN PUBLIC LANDS—INSTRUCTIONS.

In an action of trespass to try title, an instruction that if the public had used any portion of the land in controversy for a street, plaintiff, who claimed title by limitation, could not recover was too general, and calculated to mislead the jury; for mere permissive use by the public as a road would not defeat plaintiff's claim of title by limitation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66; Dec. Dig. ☞116.]

**14. ADVERSE POSSESSION ☞7 — PUBLIC LANDS.**

Title to public land cannot be acquired by limitation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 24–42; Dec. Dig. ☞7.]

**15. APPEAL AND ERROR ☞759—SCOPE OF REVIEW—FAILURE TO BRIEF ERRORS.**

Although assignments of error are not briefed, as required by law, the court may, in view of another trial, consider them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. ☞759.]

**16. DEDICATION ☞37—INTERESTS IN LAND—USE OF LAND ACQUIRED—"PUBLIC USE."**

Use of land by a railroad which leased it to others for storage purposes, though convenient for the railroad in unloading goods, is not a use for the benefit of the public generally, being equivalent to use for a warehouse.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73, 74; Dec. Dig. ☞37.

For other definitions, see Words and Phrases, First and Second Series, Public Use.]

**17. RAILROADS ☞62—INTERESTS IN LAND—CAPACITY TO HOLD.**

Although Rev. St. art. 6537, authorizes acquisition of land by railways when necessary for construction and use of the line or stations or other accommodations, and article 6538 authorizes railways to take lands by grants, and article 6539 requires railways to alienate all lands except those used for depot purposes, machine shops, turnouts, and stations, a railway may take title to land for any purpose, good against all the world except the state.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 139; Dec. Dig. ☞62.]

**18. ADVERSE POSSESSION ☞106 — COMPLIANCE WITH STATUTES—EFFECT—ABSOLUTE TITLE.**

The statutes of limitations, when complied with, confer absolute title on the claimant of land.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 604–623; Dec. Dig. ☞106.]

**19. ADVERSE POSSESSION ☞10 — CORPORATIONS—CAPACITY TO ACQUIRE LAND—ULTRA VIRES ACTS.**

Since a corporation may recover land on record title acquired by ultra vires act, no reason can be advanced why it cannot do so on a title by limitation so acquired, there being no exception to the statutes of limitations of land based on ultra vires acts.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 58–64; Dec. Dig. ☞10.]

**20. CORPORATIONS ☞487 — EXECUTORY CONTRACTS—ULTRA VIRES ACTS—ENFORCEMENT.**

The courts will not aid in performing an ultra vires act by enforcing an executory contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. ☞487.]

### On Motion for Rehearing.

**21. DEDICATION ☞44—PUBLIC LANDS—EVIDENCE—SUFFICIENCY.**

In an action of trespass to try title, on the issue of whether the land in suit was public and not subject to be acquired by plaintiff by limitation, where maps exhibited conflicted as to the size of the block and width of streets, but the map by which the original owner platted the land showed a small block with a space wider than other streets surrounding it, without indication of dedication to the public, or reservation to himself, or evidence of further claim by him, the recording of the map did not

evidence a transfer to the city of such spaces, but only an intention to dedicate them to the public as commons, or ways, so that plaintiff might acquire title, by limitation.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. ☞44.]

**22. APPEAL AND ERROR ☞1066 — HARMLESS ERROR—INSTRUCTIONS.**

Where, in an action of trespass to try title, the plaintiff railway company claimed by limitation lands alleged by defendant to be public, an error in an instruction that if the land was not appropriated to public use the plaintiff could acquire title by limitation, where the evidence failed to show that all the land was not public grounds, is not harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

Appeal from District Court, Brazos County; J. C. Scott, Judge.

Action by the Houston & Texas Central Railroad Company against C. A. Buchanan. From a judgment for plaintiff, defendant appeals. Reversed and remanded, and on motion for rehearing, motion overruled.

Lamar Bethea and W. C. Davis, both of Bryan, for appellant. Baker, Botts, Parker ∝ Garwood, of Houston, and Stribling & Stribling, of Waco, for appellee.

MOURSUND, J. The Houston & Texas Central Railroad Company sued C. A. Buchanan in trespass to try title, seeking to recover a parcel of land in the city of Bryan 60 by 250 feet out of block 266. In addition to the formal allegations in trespass to try title, plaintiff alleged that it had acquired title under the statutes of limitation of 5 and 10 years. Defendant's answer consisted of a general demurrer, various special exceptions, a plea of not guilty, denials of the allegations contained in the petition, and special pleas. One of these pleas was that plaintiff was estopped from recovering on account of a certain judgment recovered by the city of Bryan against the Houston & Texas Central Railway Company and others on March 7, 1884, for the premises in controversy. Another was that, on account of the provisions of article 6537 of the Revised Statutes, plaintiff, a railroad corporation, could not hold land for commercial purposes; that it undertook to hold the land in controversy for such purposes, and therefore could not acquire title thereto by limitation. Defendant pleaded further that if plaintiff ever had any title in the premises, the same was acquired for right of way purposes, and that it had not been used for such purposes for many years, or for any other purposes connected with or pertaining to the operation of the railroad, and on account of nonuser it had lost its right to such property, if it ever had any. Defendant also pleaded that the premises sued for had been designated by the city of Bryan as a block in said city on January 8, 1909, and that prior to said date it had been a public street, or thoroughfare, and used by the public as such, and therefore

---

plaintiff could not have acquired title thereto by limitation. Supplemental pleadings were filed by the parties, but it will be unnecessary to state the contents thereof further than to say that defendant alleged that the plaintiff was the successor in interest of the Houston & Texas Central Railroad Company, and therefore bound by the judgment pleaded in the original answer, and issue was joined upon such allegations.

[1, 2] By the first two assignments of error complaint is made of the overruling of special exceptions. Paragraphs 3 and 4 of the petition contain no averments to the effect that plaintiff was holding or acquiring the premises for commercial purposes, and therefore the issue, whether title by limitation could be acquired under that character of use and possession, could not be raised by exception. The petition did not show that the premises in controversy had ever been part of a public road, or otherwise dedicated to public use, and therefore the issue, whether title by limitation could be acquired to that character of premises, could not be raised by special exception. The assignments are therefore without merit.

[3, 4] There is no merit in the third assignment of error. The statement of the witness that he had been advised by the legal department of the company in years past that the company had a claim and right to the property was not the witness' conclusion, but was merely stating as a fact that a certain statement had been made to him. The other objections mentioned in the assignment of error are not shown by the bill of exceptions to have been made upon the trial.

[5, 6] By the fifth assignment complaint is made of that paragraph of the court's charge in which he withdrew from the consideration of the jury certain evidence which had been admitted, viz., the judgment in the case of City of Bryan v. H. & T. C. Railway Co., the deed from the receiver of the Houston & Texas Central Railway Company to F. P. Olcott, the deed from said Olcott to the Houston & Texas Central Railroad Company, and the charter of the Houston & Texas Central Railroad Company. The only proposition under this assignment relates to the admissibility of the judgment. The judgment is not copied in the bill of exceptions, but the statement is therein made that the deed would show that plaintiff the Houston & Texas Central Railroad Company, did not "buy any holding of said land from said railway company." This being accepted as true, no privity existed between the two companies, and a judgment rendered against the first one 5 years prior to the creation of the second one would not be admissible against the second one, even though as stated in the bill of exceptions it showed conclusively that the property in controversy was public property. As the "railroad company" did not acquire such claim or title as the "railway company" had to the property in controversy, it is impossible to see why the charter of the "railroad company" was excluded, for it would have shown that it was not created until 1889, while such company was contending that it had taken possession of and leased portions of the property in controversy in 1887. As briefed, the assignment must be overruled.

[7] The sixth assignment complains of the giving of special charge No. 2, requested by plaintiff. There was no evidence that plaintiff ever had possession of any part of the land sued for through agents, and the charge was on the weight of the evidence in mentioning possession by agents in addition to possession by tenants. We do not think this error would require a reversal of the case. The other objection urged to the charge is without merit. The assignment is overruled.

[8] By the seventh assignment complaint is made because the court gave plaintiff's special charge No. 3, which reads as follows:

"If the jury believe from the evidence that the land in controversy was grounds belonging to the city of Bryan or dedicated to it for public purposes, yet if they further believe from the evidence that said grounds were never appropriated for public use by the city, then the defendant would not be entitled to invoke the exception in favor of the city as to the statute of limitation, but the statute of limitation would apply as in other cases, and if therefore you find that said grounds were never appropriated or used for public purposes by the city, and that the plaintiff has held peaceful and adverse possession of the same, using and enjoying same through its agents or tenants for a period of 10 years before the institution of this suit, then you will return a verdict for the plaintiff for the land sued for."

This charge is erroneous. The fact that the city may not have appropriated grounds for public use, which were dedicated or conveyed for such use, cannot deprive the public of its rights therein. If the failure of the city to appropriate to public use public grounds authorizes the acquisition thereof by limitation, article 5683 of the statutes was adopted in vain, for the very acts, showing adverse possession, would evidence a failure to appropriate or use for public purposes. Gillean v. City of Frost, 25 Tex. Civ. App. 371, 61 S. W. 345; Spencer v. Levy, 173 S. W. 550; Krause v. City of El Paso, 101 S. W. 828; City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924; City of Victoria v. Victoria County, 115 S. W. 71; City of San Antonio v. Rowley, 48 Tex. Civ. App. 376, 106 S. W. 753. The assignment is sustained.

[9] By the eighth assignment complaint is made of the giving of special charge No. 7, requested by plaintiff, to the effect that Adams' testimony of statements by Westcott, disclaiming the title of plaintiff to the land, could not be considered except as it might affect the credibility of said Westcott. The statement shows that Adams testified Westcott told him in 1901 that the railroad company did not own the land in controversy, but claimed it; that they had no title to it. It appears that it was no part of West-

cott's duty to determine whether the company had title or not. He testified consistently to the fact that the company claimed the land during all the time he knew anything about it, and that the legal department advised him that the company had "claim and right to the property." His opinion as to the state of the title in 1901 is not binding on the company, and cannot be given the effect ·of an admission of ownership in the city. The assignment is overruled.

There is no merit in the ninth, tenth, ·eleventh, sixteenth, eighteenth, and nineteenth assignments of error, and they are overruled.

[10] The twelfth and twenty-first assignments are based upon the refusal of special ·charges, which were predicated upon testimony withdrawn from the jury. As the court had withdrawn the testimony, it would have been improper to give charges which required the jury to consider it and give it certain weight. The assignments are overruled.

[11] By the fifteenth assignment it is contended that the uncontroverted evidence shows that the property in controversy is a part of a street or public ground of the city ·of Bryan, and therefore limitation did not run in favor of plaintiff. The statement under this assignment refers to the statement under the seventh assignment. The testimony pointed out fails to show as a matter of law that the property in controversy was a street or public ground. One of defendant's witnesses testified it had been a part ·of Main street, and used by the public. Westcott, a witness for plaintiff, denied this. No deed conveying the land to the city was introduced. Westcott testified there was no deed to the city or the railroad company; that there was only the map on record. The map shows railroad tracks crossing the land in controversy, and by cross-lines indicates ·some other occupancy of a portion thereof. Westcott later on testified that in 1859 W. J. Bryan conveyed to the railroad company a right of way and to the town of Bryan the land on which the town was situated. We do not understand what Westcott means by this contradiction. If there is any deed which casts any light on this matter, it ought to have been introduced in evidence. Westcott's contention was that the land was dedicated to the use of the Houston & Texas Central Railway Company in 1868, and not to the use of the public. The assignment is ·overruled.

[12-14] The seventeenth assignment consists of three assignments of error, all of which complain of the refusal of special charges. The third of these was fully covered by the charge of the court. The other two in effect were that if the public has used any portion of the land in controversy for a roadway or street, then plaintiff could not recover such part. These charges were entirely too general, and calculated to mislead the jury. If they were intended to reach the question of the extent of plaintiff's claim, they should have been framed with that idea in view. The mere permissive use by the public of a road across land claimed by another would not prevent him from acquiring such land by limitation. We are assuming, for the purpose of discussing these assignments, that the land is not public grounds, for if it were, the entire parcel in controversy would not be subject to be acquired by limitation.

The twentieth assignment is sustained for the reasons given in sustaining the seventh assignment.

[15-20] The fourth, thirteenth, and fourteenth assignments are not briefed as required by law, the statements being insufficient, but in view of another trial, and of the importance of one of the questions raised therein, we have decided to state our views upon such question. The contention is made that a railroad company cannot acquire title by limitation to land not used for right of way or depot purposes, but leased to parties for storage purposes, it being convenient for said parties and for the railroad to unload the freight of such parties at said premises, so leased to them and upon which such parties have erected appropriate buildings. Such use was not one for the benefit of the public generally, and was equivalent to using the land for warehouse business. Lyon v. McDonald, 78 Tex. 76, 14 S. W. 261, 9 L. R. A. 295. Our statutes of limitation treat corporations as persons. But it is asserted by appellant that as articles 6537 to 6539, R. S. 1911, limit the purposes for which railroad companies are permitted to acquire land, the courts should deny the right of such companies to acquire by limitation lands not necessary for, or designed to be used for, such purposes. It has been held in this state, and may be considered to be settled, that a corporation which purchases land for a purpose other than those permitted by law acquires a title which is good and binding as to all the world except the state. Russell v. Railway Co., 68 Tex. 652, 5 S. W. 686; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 420; Tex. & Ft. S. Ry. v. T. & N. O. Ry., 28 Tex. Civ. App. 551, 67 S. W. 525; Cyc. vol. 10, p. 1135. Our statutes of limitation confer an absolute title when the terms thereof are complied with. The courts do no more than recognize such title, just as they recognize a good record title. If a corporation can recover land on a record title, the only objection to which is the fact that the land was acquired by performing an ultra vires act, it seems that no good reason can be urged why a recovery should not be permitted upon proof of facts showing a limitation title to land which it would be an ultra vires act to purchase. The courts will not enforce an executory contract, because it will not aid in the performance of an ultra vires act, but we do not see how that rule can apply to

the enforcement of a limitation title any more than it can to the enforcement of a record title. There is no exception to the limitation statutes based upon ultra vires acts, and there is no reason for the courts declaring the acquisition of lands by limitation to be prohibited, and that by purchase to be legal. This court has in two cases held that a railroad company can acquire land by limitation, although such land was not necessary for depot grounds, right of way, etc. See Small v. McMurphy, 11 Tex. Civ. App. 409, 32 S. W. 789; Kingsly v. Kerr, 135 S. W. 161.

It has also been held that a corporation acquiring land not authorized by its charter to be acquired by it may nevertheless be an innocent purchaser for value. Schneider v. Sellers, 98 Tex. 380, 84 S. W. 420. If the courts grant such rights as inure to an innocent purchaser for value under our laws, although the purchaser commits an ultra vires act in making the purchase, there seems no good reason for holding that a purchaser will be precluded from exercising rights of ownership acquired under statutes of limitation.

The twenty-second assignment relates to the sufficiency of the evidence, and need not be further discussed, as all contentions have been disposed of in considering other assignments of error.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

[21] Appellee contends that if this court is correct in sustaining assignments of error Nos. 7 and 20; that the errors pointed out should be held to be immaterial. The contention is that the evidence shows as a matter of law that the land in controversy was not dedicated to the public. The map recorded in Book H indicates, as stated in our former opinion, that railroad tracks at the time the map was made crossed a portion of the land in controversy, and indicated some other occupancy of a portion of such land, and to that extent shows an intention not to donate the same to the public, but the block of which half is claimed by Buchanan was laid out as indicated by the map on page 184, Minute Book B, so as to be the same size as block 260, while on the map recorded in Book H the block on which appear lines indicating occupancy is much smaller than block 260 which lies west thereof. The open space left between said block and the one lying east of block 106 is much greater than the space between blocks 106 and 260. It appears to us that such portion of block 266 as can be shown to be included within the block depicted on the map recorded in Book H, if said map furnishes the only evidence on the subject, must be held not to be public grounds or a part of a street. It is, however, impossible for us to determine what portion of the land sued for is embraced within such portion of block 266. As to that part of block 266 which is not embraced within the boundaries of the small block shown on said original map, it cannot be said that the map evidences an intention on the part of its makers to set aside the same as a part of a block reserved by the makers of the map. In other words, the map leaves the question an open one whether a wider street than the other cross streets was intended to be established between the small block covered with diagonal lines and the larger block lying south thereof which is also depicted with diagonal lines crossing it. There is also a vacant space between blocks 104 and 105 and the railroad right of way. There is nothing on the map to indicate for what purpose such space was reserved from being platted, and it appears to have been left open for the public use, just like a similar space adjoining the depot. In this connection it is to be noted that there are no words upon any of these spaces such as "public square" or "park," and most of the streets are without any names. The evidence is rather vague as to who made and recorded the map. Westbrook testified:

"In 1859 W. J. Bryan conveyed a right of way 60 feet wide to the railroad. And he also conveyed to the town of Bryan the land on which the town is situated to Groesbeck, Rice, and others in 1860."

Again he testified that Bryan conveyed the land for the town site to W. R. Baker and A. Groesbeck. If there is any deed to the town, it should be introduced in evidence. We believe, from a consideration of all the evidence on this point, that the deed was to Baker and Groesbeck, and that there is no evidence in the record other than the map recorded by them which casts any light upon the question whether they intended to reserve to themselves the open spaces or to dedicate the same to the public If they made and recorded the map, and there is no evidence of any further claim by them to such open spaces, nor any other evidence indicating an intention to retain such spaces, it is clear that the recording of the map does not evidence a transfer to the city of such spaces, but evidences an intention to dedicate the same to the use of the public as commons or ways.

[22] As the evidence does not, in our opinion, show as a matter of law that all the land in controversy was not public grounds, it cannot be said that the errors pointed out were harmless.

The motion for rehearing is overruled.