## BAIN PEANUT CO. OF TEXAS v. PINSON & GUYGER. (No. 194.) *

(Court of Civil Appeals of Texas. Eastland. Oct. 10, 1926. Rehearing Denied Oct. 22, 1926.)

**1. Pleading ☞214(3).**

Controverting affidavit to plea of privilege, alleging that defendant was a private corporation, as against a general demurrer, *held* sufficient to admit truth that defendant was a corporation at time contract sued on was made.

**2. Pleading ☞214(1).**

Rule that in testing sufficiency of pleading as against a general demurrer every intendment in favor of petition should be indulged is applicable to a controverting affidavit to plea of privilege.

**3. Trial ☞194(2)—Omission of introductory phrase in statement of issues to jury held not to constitute paragraph a charge on weight of evidence.**

Where court in stating issues began with a statement that it was a statement of the substance of the allegations of plaintiff's pleadings, and all of the paragraphs but one in such statement began with introductory phrase, "plaintiffs further allege," omission of such introductory phrase as to that paragraph *held* not to constitute it a charge on weight of evidence.

**4. Trial ☞295(1).**

Instruction must be considered as a whole.

**5. Appeal and error ☞930(1).**

Jurors are supposed to be men of sound common sense and average experience in affairs of life.

**6. Trial ☞352(1).**

That issue as to whether alleged agent had authority to make contract sued on was submitted prior to issue whether contract was in fact made, *held* not to render former issue ob-

jectionable as being a charge on weight of evidence.

**7. Sales ☞377—Petition in seller's action for breach of contract to purchase peanuts held not to show that petition was based on employment of sellers to buy peanuts in unlimited quantities or their own judgment.**

In seller's action for breach of contract to purchase peanuts, petition alleging that peanuts were bought from day to day under immediate direction and control of defendant's alleged agent *held* not to show that petition was based on alleged employment of sellers to buy peanuts in unlimited quantities or their own judgment.

**8. Principal and agent ☞123(7).**

Evidence *held* to show that agent had express authority to contract with plaintiffs to purchase peanuts for sale to his principal.

**9. Principal and agent ☞116(1)—Secret instructions between principal and agent are ineffective against third person dealing with agent in good faith in ignorance of such instructions.**

Where principal has delegated to an agent certain authority, secret or private instructions as to manner of exercising power granted, however binding they may be as between principal and agent, are ineffective against third person who deals with agent in good faith in ignorance of instructions and reliance on apparent authority with which principal has clothed agent.

**10. Principal and agent ☞116(1)—Secret instructions given agent that before concluding purchase of peanuts he should apply to principal for further instructions held not binding on plaintiffs dealing with agent without knowledge of instructions.**

Where agent had authority to buy peanuts for his principal and to determine price and grade, secret instructions given him that before concluding purchase of peanuts he should apply to his principal for further instructions *held* not binding on plaintiffs dealing with agent without knowledge thereof.

**11. Evidence ☞314(1).**

In action for breach of contract in failing to purchase peanuts, hearsay testimony that defendant had breached a similar contract with another *held* inadmissible, notwithstanding it was repeated by one of plaintiffs to alleged agent of defendant.

**12. Appeal and error ☞1170(7)—Error in admitting hearsay testimony held not to require reversal, in view of verdict (Court of Civil Appeals rule 62a).**

In seller's action for breach of contract to purchase peanuts, error in admitting hearsay testimony of breach of similar contract by defendant *held* not to require reversal, in view of Court of Civil Appeals rule 62a, where jury awarded plaintiffs only amount which they had paid for peanuts purchased less sum received when they were sold by plaintiffs, excluding entirely expenses incurred and commission claimed.

Appeal from District Court, Comanche County; Joe Eidson, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted December 15, 1926.

Suit by Pinson & Guyger, as partners, against the Bain Peanut Company of Texas, for breach of contract. Judgment for plaintiffs, and defendant appeals. Affirmed.

See, also, 273 S. W. 655.

Bryan, Stone, Wade & Agerton, Alfred M. Scott, and B. G. Mansell, all of Fort Worth, and Geo. E. Smith, of Comanche, for appellant.

Callaway & Callaway, of Comanche, for appellees.

PANNILL, C. J. Appellees as partners brought this suit in the district court of Comanche county, Tex., against appellant for damages for breach of contract. Summarized, the allegations are that appellant, a corporation acting through one Huxford, its duly authorized agent, entered into a contract with appellees in Comanche county to purchase peanuts; that appellees were to purchase such peanuts at the current prevailing market price from day to day, and were to pay therefor and store the peanuts; that when dry enough to ship, such products were to be shipped to appellant's factory; and that appellant would reimburse appellees for their entire outlay and pay appellees an additional sum of 10 cents per bushel for their services; that appellees under the direction of said Huxford from day to day purchased peanuts and incurred certain sums for drayage, storage, and insurance; that after the products mentioned had been properly cured, appellees made demand upon appellant to accept and pay for such peanuts in accordance with the agreement; that the demand was refused; and that thereupon appellees sold said peanuts in the open market at the best price obtainable and sued for the difference in the amount paid and the price obtained, together with commission and expenses incurred. Appellant pleaded its privilege to be sued in Tarrant county, and, subject thereto, pleaded a general demurrer and general denial.

Appellees filed a supplemental petition; allegations thereof deemed material will be noticed hereinafter.

There was a trial to a jury and a special verdict establishing the material averments in appellees' petition, with damages laid at the difference between the price actually paid by appellees and the amount actually received by them for the peanuts in question, denying any recovery for the items of commission, drayage, insurance, and storage.

[1] The appeal is predicated upon 32 assignments of error, but it is unnecessary to discuss these assignments in detail, as it is believed that the discussion hereinafter attempted disposes of all the points presented. Appellees' controverting affidavit to said plea of privilege is attacked by general demurrer, the precise point being that the controverting affidavit alleged that the appellant is a private corporation instead of alleging specifically that it was a private corporation when the acts complained of occurred. The suggestion is made that proof could not be had under said allegations of appellant's status as a corporation at the time the alleged contract was made. The controverting affidavit as against a general demurrer is deemed sufficient to admit proof that appellant was a corporation at the time of the alleged formation of the contract.

[2] The rule is, that, in testing the sufficiency of a pleading as against a general demurrer, every intendment in favor of the petition should be indulged. This rule is applicable to a controverting affidavit. Miller v. Flynn et ux. (Tex. Civ. App.) 279 S. W. 879. That case seems to dispose of appellant's contention as stated.

It is also claimed that the venue was not properly laid in Comanche county, because the controverting affidavit alleged express authority in the supposed agent, Huxford, to make the contract and there is no competent evidence showing such authority. Inasmuch as this question is also raised as to the merits of the case and the determination of the alleged agent's authority will dispose of the case on its merits, this contention will be discussed hereinafter.

[3-5] The court, while submitting the cause on special issues, made a detailed explanation of appellees' pleading. This statement of the issues began with a statement that it was a statement of the substance of the allegations. All of the paragraphs but one in this statement begin with an introductory phrase, "the plaintiffs further allege." In such paragraph this introductory phrase was omitted. It is claimed that this omission constituted said statement a charge by the court on the weight of the evidence and amounted to a statement to the jury that in the court's mind those allegations had been established by the evidence. We are unable to agree with this contention. The instruction of the court to the jury must be considered as a whole. The jurors are supposed to be men of sound common sense and average experience in the affairs of life. The reading of the whole of the court's statement of the issues would make it apparent to any person possessing the qualifications of a juror that the court was merely stating to the jury the issues pleaded by the respective parties preliminary to a submission of the contested issues of fact.

[6] Special issue No. 1 submitted to the jury the issue as to whether the alleged agent, Huxford, had authority "to make the contract in question." The submission is assailed as being upon the weight of the testimony in that it assumes that the contract had been made. Following this, the court submitted to the jury the issue as to whether or not the contract alleged was in fact made by Huxford with appellees.

It is practically conceded by appellant that if issue No. 2 had preceded issue No. 1, that the objection made would not be tenable. It is

true that these issues were submitted out of logical order, as the first question to be determined was whether the alleged agreement had been made, but it is not perceived how the submission of these issues out of their order would bring issue No. 1 under the condemnation of being a charge upon the weight of the evidence. The issue in and of itself does not assume that a contract was made, because the use of the words "in question" clearly indicates to the jury the court's assumption that the alleged contract was in dispute, and that whether such an agreement as alleged by plaintiff had been made by Huxford was in question.

Issues submitting questions as to the holding out by appellant to the general public of Huxford as its agent authorized to make contracts for the purchase of peanuts, knowledge on the part of appellees as to such holding out, and as to whether appellees were induced by the acts and conduct of appellant to believe that Huxford was duly authorized to make such contracts, were objected to on various grounds. It is not deemed necessary to discuss those assignments in detail. We believe that the record shows express authority in Huxford to act for appellant in so far as such authority is required to sustain the verdict as will be hereinafter more fully shown.

[7] The charge as a whole was excepted to and a peremptory instruction requested because the evidence introduced had no basis in appellees' pleading. It is asserted that the plaintiff's petition was based upon an alleged employment of appellees by Huxford as subagents for appellant to buy peanuts in unlimited quantities on their own judgment, and that the evidence showed conclusively that Huxford had no such authority. It is agreed that Huxford did not have authority to employ appellees as subagents to buy peanuts for appellant in unlimited quantities on the unrestrained judgment of appellees as to quantities and price, but we do not concur in appellant's claim that such was the case made by the petition. The petition alleged specifically that the peanuts were bought from day to day under the immediate direction and control of Huxford. This allegation is a sufficient answer to the contention noted.

Assignments are directed to the court's ruling in permitting testimony as to conversations and acts with Moake and Norman, agents of appellant. These assignments are too general to be considered, and, if considered, present no reversible error. The testimony appears to be harmless in that the acts and declarations made by Moake and Norman to appellees were also shown to have been concurred in by Huxford. Said Moake and Norman' were shown beyond controversy to have authority to buy peanuts for appellant, and while the petition alleged that the contract was made with Huxford, appellees in their supplemental petition in general terms alleged ratification on the part of appellant of Huxford's alleged agreement, and it is believed that the acts and declarations of Moake and Norman with reference to such peanuts were admissible on said issue of ratification.

[8-10] Running through appellant's entire brief and connected in some way with almost every assignment is the claim that the uncontradicted evidence shows that Huxford had no authority to make the contract testified to by appellees. It is undisputed that Huxford was a peanut buyer for appellant, and that he had authority to inspect and buy peanuts both from local dealers and from farmers, and that his authority extended not only to fixing the price but to determine the grade. Appellees testified: That Huxford made an agreement with them to buy peanuts for Bain Peanut Company under his direction, and that Huxford gave them prices from day to day—was at their place of business nearly every day and at least several times a week. That he inspected most of the peanuts purchased by them before they were bought, determined the grade and gave them the price to be paid, and in every other instance where Huxford did not inspect the peanuts before purchasing he did so within a day or two after appellees had purchased such peanuts, and in every instance approved appellees' act in purchasing the peanuts, superintended the way in which said peanuts were to be handled, dictated their correspondence to appellant in regard to peanuts, and exercised the most minute supervision over the whole course of dealing under review. It is true that appellant's general agents claimed that in buying peanuts Huxford had instructions to keep in touch with its general office and ascertain the amount and grade of peanuts which were wanted from day to day, and that Huxford received such instructions daily from appellant's principal office and acted upon such instructions in buying peanuts. These instructions, however, were admitted by appellant's general agents to be secret instructions, known to appellant and its agents only.

It is well settled, where a principal has delegated to an agent certain authority, that secret or private instructions or limitations as to the manner of exercising the power granted, however binding such instructions may be between the principal and his agent, can have no effect on a third person who deals with the agent in good faith in ignorance of the instructions or limitations and in reliance on the apparent authority with which the principal has clothed him. 2 C. J. p. 566; Conn v. Hagan et al., 93 Tex. 334, 55 S. W. 323. Huxford having the authority to buy peanuts for appellant and according to appellant's own testimony having the authority to determine the price and the grade and the discretion and authority to purchase or not purchase, the secret instructions given him that before concluding such purchase he should apply to his principal for further instructions are not. binding upon appellees.

The evidence is deemed sufficient to show express authority on the part of Huxford to make the questioned contract, particularly in view of the verdict, which allowed a recovery only for the purchase price of the peanuts and excluded any commission or expenses.

[11] The most serious point presented arises from the testimony of one of appellees, admitted over appellant's objection, as to a conversation between said appellees and the alleged agent in which one of the appellees was permitted to testify, in substance, that said appellee told said Huxford that a Mr. Smith had told appellee that he knew a man up here somewhere who said Mr. Barlow (appellant's general manager) broke him. Appellee was further permitted to testify:

"I told Mr. Huxford what Mr. Smith told me. I asked Mr. Huxford if there was any danger of the Bain Peanut Company laying down on me, and he said there was not, and I told him Mr. Smith said that they laid down on a man up the country there. I told him Mr. Smith said the Bain Peanut Company broke a man up there on some deal up around Gorman."

The objection to this testimony was that it was hearsay and came within the rule excluding "res inter alios acta." This testimony should not have been admitted. Tippett v. Hickox (Tex. Civ. App.) 238 S. W. 715. It was pure hearsay, and gained no validity because repeated by one of the appellees to the alleged agent, Huxford. The question as to whether this testimony should be held to be reversible error is one of some difficulty. Its injurious effect is probable.

[12] As noted, the jury's verdict awarded appellees only the amount which they had paid for the products purchased less the sum received when such products were sold by appellees, excluding entirely the expenses incurred by appellees of drayage, insurance, and storage, as well as the commission claimed. The answers of the jury establishing the contract would have fully justified that body in awarding a larger sum to appellees. It therefore appears that the verdict of the jury was confined to and responsive to the material evidence in the case. Rule 62a, promulgated by the Supreme Court, governing the disposition of appeals in the Courts of Civil Appeals, forbids a reversal for errors in the admission of testimony where the error complained of does not amount to such a denial of the rights of appellant as was rea-

sonably calculated to cause and probably did cause the rendition of an improper verdict. This rule has recently been declared by the Supreme Court not to apply to rulings of the court on demurrers or instructions to juries in violation of the acts of the Legislature, and that in such cases it is only necessary to show probable injury. Eastern Texas Electric Co. v. Baker (Tex. Com. App.) 254 S. W. 933; Golden v. Odiorne, 112 Tex. 544, 249 S. W. 822.

This holding is predicated upon the proposition that the Supreme Court has no authority to promulgate a rule inconsistent with the acts of the Legislature. In the case last cited above, a distinction was made between such rulings and those involving the admission of testimony. Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S. W. 899, is cited with approval. The latter case upheld a decision by the Court of Civil Appeals refusing to reverse a judgment on account of admission of incompetent testimony under rule 62a. The effect of these decisions seems to be that when a violation of the statutes with reference to pleadings and the submission of the case to the jury is shown, injury is presumed, but in reviewing the erroneous admission of testimony, it must appear to the Court of Civil Appeals that the error was such as was calculated to cause and probably did cause the rendition of an improper verdict in order to constitute reversible error. In this case the appellees' testimony established on the part of appellant the breach of a contract made by its duly authorized agent. The inadmissible testimony was given by one of the appellees. The statement by said appellee that he had heard that Bain Peanut Company had breached a similar contract is not as strong as such appellee's positive unequivocal testimony as to the breach of the contract in question.

If the jury had discredited appellees as to the main issue, it would not rest its verdict on this objectionable evidence. If the testimony had been given by a disinterested witness, the error in admitting it would be a more grievous one.

These considerations, added to the one noted above that the jury found for an amount substantially less than they would have been authorized to award to appellees, constrains us to hold that the error complained of is not of sufficient importance to order a retrial of the case. All the assignments are overruled, and the judgment is affirmed.