ATLAS PETROLEUM CORPORATION v. GALVESTON, H. & S. A. RY. CO. et al.
(No. 2124.)

Court of Civil Appeals of Texas.    El Paso.
March 22, 1928.

Rehearing Denied April 12, 1928.

1. Corporations ⊚=387(2)—Railroads ⊚=18— State alone may question corporation's right to hold lands for purpose other than permitted by law; hence railroad's lessee could not raise question (Rev. St. 1925, arts. 1359, 1360, 1364, 6341–6343).

A corporation which has purchased or holds lands for a purpose other than permitted by law acquires title which is good and binding as to all the world except the state, and the state

alone can question its title, hence lessee of land from railroad could not question railroad's title to land on theory that land was not owned or held for railroad purposes, under Rev. St. 1925, arts. 1359, 1360, 1364, 6341–6343.

2. Landlord and tenant ⊚=62(2)—Lessee of land from railroad held estopped to deny lessor's title.

Lessee of land from·railroad was estopped to deny lessor's title where facts alleged by it as to land being public domain and that lessor was not the owner thereof were not made to appear, and in absence of showing that lessee's possession was in any way connected with a superior outstanding title.

3. Landlord and tenant ⊚=72—Lease for term not stated is for 1 year.

A lease for a term not stated is a lease for 1 year.

4. Landlord and tenant ⊚=72—Alleged oral lease for 30 years held superseded by subsequent written lease for shorter term.

Alleged oral lease for 30 years *held* superseded by subsequent written lease for shorter term between the parties, and lessee could not disavow the written lease and fall back on the alleged oral lease abandoned when it entered into the written lease contract.

5. Contracts    ⊚=245(1)—Written    contract merges all previous negotiations and agreements.

Where parties have put their engagements in writing in terms importing a legal obligation without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject-matter are presumed to have been merged in the written contract, and the whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing.

6. Evidence ⊚=448—Parol evidence is inadmissible to explain unambiguous written contract.

Where written contract is free from ambiguity and is in itself susceptible ·of a clear construction, parol or extrinsic evidence is not admissible to explain or determine the construction thereof.

7. Pleading ⊚=8(2)—Allegation that authority of president of corporation was limited as stated held mere conclusion of pleader.

Statement in a pleading that authority of president of corporation was limited as therein stated *held* mere conclusion of pleader.

8. Corporations ⊚=383, 398(1)—Corporation could act only through its directors and officers, and managing trustee, superintendent, and attorney in fact of stockholders could not divest directors' and officers' authority (Rev. St. 1925, art. 1320, subd. 7, and arts. 1322, 1323, 1325, 1327).

Under Rev. St. 1925, art. 1320, subd. 7, and articles 1322, 1323, 1325, 1327, corporation could legally act only through its directors and its chosen officers, and authority and powers of such directors and officers could not be divested by a managing trustee, superintendent,

---

⊚=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and attorney in fact of the stockholders, though assuming to act for the corporation.

**9. Corporations ⬤⟶409—Execution of lease by president, approved by directors, held binding on corporation, in absence of notice to lessor of alleged limitation on president's power.**

In absence of any knowledge or notice of alleged limitation on power of corporation's president to execute lease of realty to be used by corporation, lessor was justified in dealing with corporation through president, and act of president in executing lease with approval of majority of directors was binding on corporation.

**10. Corporations ⬤⟶521—Where alleged resolution limiting president's authority was not produced nor proved, trial court properly disregarded it and peremptorily charged on issue of president's authority to execute lease.**

Where alleged resolution of corporation limiting powers of president was not produced nor duly accounted for nor sufficiently established, trial court was justified in disregarding it and peremptorily charging jury on issue of president's authority to execute lease for corporation as lessee.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Action by the Galveston, Harrisburg & San Antonio Railway Company and others against the Atlas Petroleum Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Morriss & Morriss and Arthur V. Wright, all of San Antonio, E. G. Senter, of Dallas (Will A. Morriss, of San Antonio, of counsel), for appellant.

Templeton, Brooks, Napier & Brown and Wm. Aubrey, all of San Antonio and Baker, Botts, Parker & Garwood, of Houston, for appellees.

WALTHALL, J. We adopt the statement of the nature and result of the suit made in the brief of appellees San Antonio Compress Company, William and Herman Gee, as a fair and sufficiently comprehensive statement of the matters here in controversy.

The Galveston, Harrisburg & San Antonio Railway Company, hereinafter styled Railroad Company, brought suit in the court below against appellant, Atlas Petroleum Corporation, hereinafter styled Atlas Company, and Service Dealers' Supply Company, Inc., hereinafter styled Supply Company, to recover the possession of block 2510, in the city of San Antonio, Tex.

The Atlas Company appeared and filed four original and amended answers, one supplemental answer, and one trial amendment.

The Railway Company alleged:

That by instrument in duplicate, dated November 15, 1923, it had leased to the Atlas Company said block of land for the term of 3 years, for an annual rental of $250, payable in advance at the office of the Railway Company at Houston, Tex., and that said lease was made subject to the following terms and conditions, viz.:

"Upon the happening of a breach of any one or all of them or at any time thereafter, or for a failure to make the payments herein provided for, this lease may be terminated on written notice to the lessee."

That said lease contained the following conditions, viz.: The lessee shall not sublet the said premises, or any part thereof, without first obtaining the consent, in writing, of the lessor so to do, and the lessee shall occupy the leased premises and continue to occupy and use the same continuously until the termination of the lease for "oil refining" and no other purposes.

That the Atlas Company had breached the conditions of the lease by failing and refusing to pay, as and when the same became due, the said rental; that it had sublet the premises pending its lease to said Supply Company; and that it had caused and permitted the premises to be used for purposes other than oil refining, and to be occupied and used by others than itself, and that it had not continuously used the premises for oil refining or for any other purposes.

That the Railway Company, by reason of said breaches, had terminated said lease, had given the Atlas Company proper notices of the termination of that contract, and had made three demands for the possession of the leased premises, but that the Atlas Company had failed and refused to restore the possession of the leased premises to the Railway Company, and that the leased premises were of the reasonable rental value of $200 per month.

The Railway Company prayed for the restoration of its property and the recovery of judgment for its damages.

The Atlas Company in its fourth amended answer alleged that it had and held possession of the leased premises under an oral lease made in the early part of 1923 by the Railway Company, acting through L. B. McDonald, superintendent of its San Antonio division, thereunto duly authorized; that pursuant to and relying upon said oral agreement, it had purchased valuable improvements located on the premises from a refining company which previously owned the same, took possession of the leased premises, and constructed thereon permanent and valuable improvements in an amount not less than $15,000; that said oral lease provided for a term of 30 years. It further alleged that it had not paid the rental alleged to be due because it did not expect the Railway Company to take advantage of its default in that respect and tendered the amount of said

rental; that it had actually delivered a check covering said rental to an agent of the Railway Company authorized to receive the same, but that said check had been returned to it by the Railway Company with the statement that the lease had been terminated and that the rental thereof would, accordingly, not be received; that the subletting of the leased premises to the Supply Company had been made pursuant to the consent of the Railway Company first had and obtained; and that the Railway Company was estopped, by reason of the facts so alleged, from terminating the lease or recovering the possession of the leased premises.

The Atlas Company further alleged, among other things, that the Railway Company was not the owner of the land sued for or entitled to the possession thereof for the reason that that Company had purchased the land in the year 1881; that it had never been used nor reserved for railroad purposes or for the purposes of its creation as a railway corporation under the laws of this state; that the land had been held by the Railway Company for speculative purposes and for profit derived from leasing and renting the same and inducing the location of industrial and other corporations; that, in violation of the provisions of the Constitution or statutes requiring alienation thereof, the Railway Company had never alienated nor conveyed the same, and said lands had thereby become forfeited to the state of Texas; that said Atlas Company knew nothing of these facts when it leased the premises, but relied upon the representation of the Railway Company that it was the owner thereof and authorized to lease the same; that after said lease had been made to the Atlas Company, one Lee Howell made application to the state for the purchase of the premises as a part of the public lands of the state and had applied to have the same surveyed and appraised as such; that said application was on file with the land commission of the state, and that thereby said Howell had acquired the prior right to the same and the prior right to purchase and become the owner thereof, and that the Atlas Company, being informed of the Railway Company's want of title to the premises, had secured and then had and held an agreement in writing from said Howell for the use and occupancy of said premises for the remaining period of its lease from the Railway Company; and finally alleged that "defendant now pleads said outstanding title and says it is not bound by reason of the lease from plaintiff nor bound to surrender same to plaintiff at the termination of its lease."

By one of its pleadings, the Atlas Company alleged that the San Antonio Compress Company and Herman and William Gee had conspired with the Railway Company to break said lease; that the action of the Railway Company was pursuant to said conspiracy, and that the Atlas Company had been damaged thereby in a very large sum of money, prayed for citation against the Compress Company and said Gees and for judgments against the plaintiff and the new defendants for its said damages.

The Compress Company and said Gees appeared and filed their answer in the case and interposed exceptions to a portion of the pleading of the Atlas Company which were sustained by the court. The Supply Company made no appearance in the case.

The facts were submitted to a jury, and, upon the close of the evidence, the Atlas Company filed its motion requesting the court to instruct the jury to return a verdict in its favor and, also, submitted to the court a special charge whereby the jury was instructed to return a verdict in its favor, with the request that said charge should be given by the court. The Railway Company, Compress Company, and defendants Gee also filed their motion requesting the court to instruct the jury to return a verdict in their favor. The trial court granted this motion, and the jury returned a verdict accordingly.

A judgment for plaintiff for the recovery of the leased premises against the Atlas Company and the Supply Company and in favor of the Compress Company and the Gees against the Atlas Company was thereupon rendered by the court. From this judgment the Atlas Company has prosecuted this appeal.

### Opinion.

Appellant, Atlas Company, presents the following propositions:

"(1) It is a violation of law and public policy in this state for a railway corporation to own and hold lands adjacent to its right of way, not used nor held for its corporate purposes, but for the purpose of leasing same to industrial enterprises and thereby to augment freight traffic over its railroad; and our courts will not lend their aid to such an illegal enterprise on the part of such railway company.

"(2) It appearing that appellee Railway Company had for many years held the land sued for, along with other lands, adjacent to its railway, they forming no part of its land held for corporate purposes, for the purpose of leasing same for and to industrial enterprises and to induce, foster, and augment traffic revenues over said railway, and that on such consideration and for such purposes it made the lease in question, our courts will not lend their aid to such unlawful enterprise to recover back premises thus illegally held and leased.

"(3) A lessee is not estopped from denying his landlord's title where the leased premises are part of the public domain, and not owned by lessor, of which fact lessee was ignorant and relied on lessor's representations as to its title at time of making the lease; hence paragraph 15 of defendant's fourth amended original answer set up a valid defense, and the trial court erred in striking out said paragraph on appellees' exception thereto.

"(4) The evidence was sufficient to take the case to the jury, and the court erred in instructing the jury to return a verdict for the plaintiff and against appellant in that appellant pleaded and proved prima facie facts which in equity would have entitled it to recover.

"(5) The pleading and evidence sufficiently showed the making of a 30-year oral lease, coupled with payments of rentals and permanent and valuable improvements on the faith thereof, to authorize and require submission of such issues to the jury.

"(6) The evidence from the appellant's standpoint showing and tending to show that appellee had made a valid and enforceable 30-year oral lease with it, on the strength of which permanent and valuable improvements were placed upon the land and rentals paid to appellee from appellant, the appellee was estopped to deny authority in its agent to make the lease in question, if, indeed, such authority did not exist.

"(7) It appearing that the annual rental payable in advance November 15, 1924, was tendered and paid shortly thereafter, about December 8, 1924, but later rejected and returned by appellee, and that appellant at all times in good faith purposed and intended to pay and keep paid such rentals, and tendered and offered to do equity and pay all rentals with interest, appellee Railway Company was not authorized to terminate the lease because of failure to pay such rental on its due date, as equity will not permit forfeiture under such circumstances."

After the request of the Atlas Company, that the court direct a verdict in its favor, was refused by the court, the Atlas Company made no request of the court to be permitted to go to the jury upon any question of fact involved in the suit, and made no request for any special instructions upon any questions of fact involved in the case. On and after the peremptory instruction of the court, the jury returned a verdict for the Railway Company, Compress Company, and the Gees; upon the verdict the court rendered judgment in favor of Compress Company and the Gees.

We will consider the first and second propositions together. They are directed to the ownership by the Railway Company of the land involved in the suit, some 2⅝ acres. The Railway Company had owned the land since about 1881. The land involved in the suit formed no part of the land owned or held by the Railway Company for its corporate purposes. Appellant pleaded the above facts, and further pleaded, in substance, that the Railway Company has never alienated nor conveyed said land as required by the Constitution and statutes of this state requiring alienation thereof, and that by reason thereof said lands have become and are forfeited to the state; that at the time it leased said land it had no knowledge of said facts, nor that same were not lawfully held and owned by said Railway Company, relied on its representations that it was the owner and authorized to lease same, and but for such rep-

resentation appellant would not have leased same and placed its improvements thereon; that since said time one Lee Howell has made application to the state of Texas, the present owner of said property, to purchase same as a part of the public lands of the state, and has made application to have same surveyed and appraised in such, and that such application is on file with the state land commissioner; that said Howell has thereby acquired the prior right to said lands and the prior right to purchase and become the owner thereof; that appellant holds an agreement, in writing, from said Howell to the use and occupancy of said lands for the remaining period of its lease from the appellee Railway Company; and that appellant now pleads said outstanding title and says that it is not bound by reason of the lease from the appellee Railway Company, nor bound to surrender same at the termination of its lease.

The trial court sustained exceptions to the appellant's above pleading on grounds, briefly stated: (a) Appellant leased said lands from the Railway Company and thereby recognized its right and title thereto and its right to lease same, and is now bound to surrender possession thereof to appellee Railway Company, on the termination of the lease; and appellant, being appellee Railway Company's tenant, cannot be heard to question or deny its right and title or its right to lease, and cannot be heard to assert any right or title except as its tenant and only such as was conferred by the lease; (b) because the facts alleged are not sufficient to show that said lands have been devoted to or used and employed by appellee Railway Company for any purpose not authorized by its charter or prohibited by the Constitution and laws of the state, or to show the existence of a state of facts that would require appellee Railway Company to alienate said lands, or that would authorize the forfeiture or escheat thereof. (c) Because appellant has no right to question appellee Railway Company's title or to bring or maintain suit to escheat or forfeit, or to require appellee Railway Company to alienate said lands, and the court has no power to enter decree affecting appellee Railway Company's title or escheating or forfeiting or requiring it to alienate said lands, at the suit of appellant; such suit of forfeiture, alienation, or escheat can be brought and maintained (if at all) only in the name and by the authority of the state.

The question presented is one of error in the court's ruling on the exceptions. Appellant refers to and quotes a part of article 6341 and 6342, R. C. S. 1925. The first article referred to states that railroad corporations shall have the right to receive such voluntary grants of real estate as shall be made to it in aid of the construction and use

of its railway, and to convey same when no longer required for its uses.

Article 6342 provides:

"All lands acquired by railroad companies under the provisions of this chapter, or any general laws, shall be alienated by said companies, one-half in six years and one-half in twelve years, from the issuance of patents to the same, and all lands so acquired by railroad companies, and not alienated as herein required, shall be forfeited to the state and become a part of the public domain and liable to location and survey as other unappropriated lands. All lands purchased by or donated to a railroad corporation, except such as are used for depot purposes, reservation for the establishment of machine shops, turnouts and switches, shall be alienated and disposed of by said company in the same manner and time as is required when lands have been received from the state."

Article 6343 provides that the two preceding articles shall apply to all corporations. Under title 32, "Corporations, Private," article 1359 provides that no private corporation shall be permitted to purchase any lands under the provisions of that chapter unless the lands so purchased are necessary to enable the corporation to do business in this state, or except where such land is purchased in due course of business to secure the payment of debt.

Article 1360 provides for the sale of surplus lands not necessary to carry on the business of the corporation as provided in the preceding article.

Article 1364 provides that all corporations holding lands contrary to the provisions of this law shall hold the same subject to forfeiture and escheat proceedings, and provides for a suit by and in the name of the state, where the lands are held in violation of the law.

The court was not in error in sustaining the exceptions.

[1] It seems to be the settled rule in this state that a corporation which purchased or holds lands for a purpose other than those permitted by law acquires a title which is good and binding as to all the world except the state. The right to question its holding of lands other than such as are necessary rests with the state alone. Russell v. Texas & Pacific Ry. Co., 68 Tex. 646, 5 S. W. 686; Buchanan v. Houston & T. C. R. Co. (Tex. Civ. App.) 180 S. W. 625; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 420; Texarkana & Ft. S. Ry. Co. v. Texas & N. O. R. Co. et al., 28 Tex. Civ. App. 551, 67 S. W. 525; Bank v. Matthews, 98 U. S. 628, 25 L. Ed. 188; Railroad Co. v. Ellerman, 105 U. S. 166, 26 L. Ed. 1015; Dillon, Mun. Cor. § 444.

In Staacke v. Routledge, 111 Tex. 489, 241 S. W. 994, it is said:

"This court, as well as the Supreme Court of the United states, has held that only the state, in a proceeding brought for the purpose, can inquire into the want of power of corporations to take and hold real estate," and referred to Scott v. Farmers' & Merchants' Nat. Bank, 97 Tex. 31, 57, 75 S. W. 7, 104 Am. St. Rep. 835; Westbrook v. Missouri-Texas L. & I. Co. (Tex. Civ. App.) 195 S. W. 1154; Cowell v. Springs Co., 100 U. S. 55, 60, 25 L. Ed. 547.

[2] The third proposition is without merit. The insistence of appellant is that where the leased premises is a part of the public domain, and not owned by the lessor, which fact was not known to the lessee at the making of the lease, lessee is not estopped from denying the landlord's title. But the facts asserted that the land is public domain, and that the lessor is not the owner of the land, are not made to appear; nor is it made to appear that the lessee's possession is in any way connected with a superior outstanding title. None of the exceptions to the rule that a tenant cannot dispute his landlord's title is established by the record. By the terms of the lease contract itself, on a failure to make the rental payment, or to sublet without the written consent of the lessor, the lease may be terminated. Elliott v. Dodson (Tex. Civ. App.) 297 S. W. 520; Bagby v. Hodge (Tex. Civ. App.) 297 S. W. 882; Tyler v. Davis, 61 Tex. 674, 60 Am. Dec. 219; Camley v. Stanfield, 10 Tex. 546.

Appellant complains that the evidence was sufficient to take the case to the jury, and assigns error to the court's action in instructing the jury against appellant. In view of our holding on other matters discussed in the opinion, we think the court was not in error in so instructing the jury.

Appellant's fifth and sixth propositions present the contention that the evidence is sufficient to raise the issue that it has an oral lease for 30 years, and that the trial court erred in instructing the verdict for the Railway Company. What we have said in discussing the fourth proposition applies to these two.

[3, 4] So far as appellant is concerned, the land belonged to the Railway Company. The Atlas Corporation has no right or claim to it, and cannot defend against the Railway Company's suit for possession except under a valid lease from the Railway Company, which we think it does not show. A lease for a term not stated is a lease for 1 year. Bankers' Trust Co. v. Hudson, 149 Ark. 472, 232 S. W. 587. But assuming that the lease was for 1 year, or for 3 years as the court could, and no doubt did find under the evidence, in either event the lease had expired before this case was tried. But appellant insists that in January, 1923, appellant made a parol contract with Mr. McDonald, the Railway Company's superintendent, for a 30-year lease, and that under said lease certain permanent and valuable improvements were placed upon the land and rentals paid, and for reasons stated appellee was estopped to deny the authority of its agent to make the

30-year lease. But if it be true, as contended, the subsequent written lease superseded the alleged prior oral lease, and we think appellant cannot disavow its subsequent written lease and fall back on the alleged oral lease abandoned when it entered into the written lease contract.

[5, 6] The rule is elementary that where the parties have put their engagements in writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject-matter are presumed to have been merged in the written contract, and the whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing, and, where the writing is free from ambiguity and is in itself susceptible of a clear construction, parol or extrinsic evidence is not admissible to explain or determine the construction of the writing. 22 Corpus Juris, 1098; Jones v. Risley, 91 Tex. 1, 32 S. W. 1027, and cases cited in the opinion. We concur in the contention of appellee that, before the Atlas Corporation can get anywhere with its claim of oral 30-year lease, it must first get rid of the subsequent written lease it executed by its president, L. H. Coursen.

It is not denied that Coursen was president of the Atlas Corporation, nor that he as such executed the written lease for it, but it is insisted that in doing so he was without authority, and therefore his act in executing the written lease was not binding on appellant. Under article 1322, R. C. S. 1925, appellant could act in the matter through its president. Our Supreme Court, in Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734, held that when a corporation so acted, in the absence of evidence to the contrary, it would be presumed that the instrument was executed by authority, citing Smith v. Smith, 62 Ill. 493, holding that an act pertaining to the business of the company is performed by him, it will be presumed the act was legally done and binding upon the company. Without quoting appellant's pleading at length, it is alleged that while Coursen was president of the corporation, Eli Howell was "managing director and superintendent," and as agent and attorney in fact for and holding the proxies of the owners of all stock of said corporation "* * * and as such and on behalf of said stockholders, and under the direction of said stockholders, was vested with the management, superintendency, and absolute control of said corporation," and for that reason Coursen had no authority to act for appellant "save and except such authority as was from time to time specially conferred by said stockholders through said Howell," and that Coursen's authority to act was so limited.

If the trial court found the facts to be as alleged by appellant, we still think Coursen had the power to act as president of the corporation and for the corporation in the making of the written lease.

[7] The statement in the pleading that Coursen's authority was limited as stated is but a conclusion of the pleader, and unless the facts pleaded would have the legal effect to withdraw from Coursen the power to act for the corporation his act in executing the lease would be the act of appellant.

It will be observed from the pleading that Eli Howell was acting for and on behalf of the stockholders of the corporation, and under the direction of the stockholders, and not the official board of directors or trustees of the corporation.

Article 1320 of our statutes, in stating the general powers of a private corporation, by subdivision 7, includes the power: "To enter into any obligation or contract essential to the transaction of its authorized business." Article 1322 provides the corporation, in transactions such as are involved here, acts through the "president or presiding member or trustee of said corporation." Articles 1323, 1325, and 1327, in turn, make a majority of the directors or trustees to constitute a quorum and competent "to transact all business of the corporation," "choose one of their number president, and shall appoint a secretary and treasurer and such other officers as they may deem necessary for the corporation," and that "the directors shall have the general management of the affairs of the corporation." We have referred to the articles of the statute to show that the power of a corporation to act is through its constituted board of directors, and such officer or officers as the board of directors may choose from the membership of the board. As said by Judge Fly in Sabine Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 837:

"To permit corporations to enter into contracts which would practically destroy their identity, and create other managers and agents for them than those provided by law, would be contrary to public policy, and subversive of the laws of their creation."

And he makes other observations pertinent to the issues here involved, but which, for brevity, we omit.

[8] The Atlas Corporation could legally act only through its directors and its chosen officers; a managing trustee and superintendent, and agent and attorney in fact of the stockholders, could not, we think, though assuming to act for the corporation, divest the board of directors and its chosen officers of the powers and authority vested in them by the law.

[9] There is no evidence in the record that the Railway Company, at the time of the execution and delivery of the written lease, had any knowledge or notice of the alleged limitation of the corporation's president to

execute the lease. The appellee was therefore justified in dealing with the appellant corporation through its elected officers, and, they having assumed to act for the corporation, and within the apparent scope of their authority, their acts were the acts of the corporation and binding upon it. Domestic Bldg. Ass'n v. Guadiano, 195 Ill. 222, 63 N. E. 68; Conn v. Hagan et al., 93 Tex. 334, 55 S. W. 323; Bain Peanut Co. v. Pinson & Guyger (Tex. Civ. App.) 287 S. W. 87; 2 C. J. 566.

The record shows that the written lease contract in question was actually signed by the president of the Atlas Corporation, Coursen, and was handled and approved by Trowbridge, the secretary-treasurer of the Atlas Corporation, both of whom were directors of the corporation, Mr. Howell being the vice president and the three named constituting the board of directors; that is, the two active officers constituting a majority of the board of directors actually knew all about, approved, and participated in the making of the lease contract. Mr. Howell, the other member of the board, says he repudiated the lease as soon as it came to his knowledge and notified the Railway Company of his repudiation. We need not state the evidence at length. We note, however, that Mr. Howell does not claim to have repudiated the lease because of lack of authority of Coursen to execute it, nor that the repudiation was by the Atlas Corporation or its directors, but was by Mr. Howell himself. He stated:

"I turned it back to them and said, 'That is not any lease contract that I have with Mr. McDonald,' the Railway Company's superintendent."

[10] The evidence as to the wording and terms of the resolution purporting to deprive the appellant of authority to act except at the suggestion of Mr. Howell is so vague and uncertain that it is not legally sufficient to show that the president was deprived of authority to execute the lease contract in behalf of the corporation. The alleged resolution was not produced, nor duly accounted for, nor proved, and the trial court was justified in disregarding it as he evidently did in peremptorily charging the jury.

We have concluded from the evidence and all the attending circumstances connected with the execution of the lease contract that the court was justified in instructing the jury on the facts, as requested by appellant. It is insisted that because the annual rental payable in advance on November 15, 1924, was tendered on December 8, 1924, and that appellant at all times and in good faith purposed and intended to pay the rental, appellee was not authorized to terminate the lease for failure to pay the rental when due.

As stated in discussing a former proposition, the lease by its terms provided that the rental was payable in advance, and that a failure to make the payment provided for the lease may be terminated. The lease also provided that the lessee shall not sublet the premises or any part thereof without first obtaining the consent, in writing, of the lessor so to do. The appellant breached the lease contract in both particulars.

All parties have filed very exhaustive, interesting, and helpful briefs in the case. The appellees have discussed the issues under a number of counterpropositions which we have not extended the opinion to discuss.

We have concluded that the record shows no reversible error, and the case is affirmed.