**BERRY et al. v. HUMBLE OIL & REFINING CO. et al.**

No. 2722.

Court of Civil Appeals of Texas. Waco.

Oct. 9, 1947.

Rehearing Denied Oct. 30, 1947.

E. A. Landman, of Athens, for appellants.

Wynne & Wynne, of Wills Point, H. L. Bromberg, Jr., and G. W. Schmucker, both of Dallas, Joe S. Brown, Dillard W. Baker, Moody P. Pearson, and R. E. Seagler, all of Houston, Carrington, Gowan, Johnson & Walker, of Dallas, and John E. Green and Rex G. Baker, both of Houston, for appellees.

LESTER, Chief Justice.

This is a trespass to try title suit involving the title and possession of 207 acres of land located in Van Zandt County, Texas, and for the recovery of a large sum of money as damages, rentals, royalties, etc., brought by the heirs of R. W. Berry and wife, Mahulda Berry, against the Humble Oil & Refining Company, Sanger Investment Company, Sanger Bros., and the Gulf Oil Corporation.

The record discloses that in 1857, Richard Walling and wife conveyed to R. W. Berry 2862 acres, more or less, and being the unappropriated part of the John Walling Headright League. From 1858 to 1862, R. W. Berry sold to various parties approximately 2700 acres of said land and in two of the deeds executed by him references were made to a 200 acre division made by R. W. Berry to C. H. Gilchrist. The record does not disclose any conveyance out of R. W. Berry to Thos. H. Duke, but it does contain a warranty deed from Thos. H. Duke to James Berry, of date 1860, conveying the

same land that is in controversy in this suit, and the record reflects thereafter the following instruments executed and filed of record, which constituted the chain of title to the land herein involved up to the time appellants filed suits to recover the same:

(1) Warranty deed from Thomas H. Duke to James Berry, dated February 6, 1860, filed for record March 16, 1860, by P. G. Whetstone, C.C.C., Rusk County, Texas, filed for record March 22, 1938, and recorded in Vol 266, p. 590, of the Deed Records of Van Zandt County, Texas.

(2) Warranty deed from James Berry to F. M. McClure, dated May 9, 1862, filed for record February 12, 1877, and recorded in Vol. S, p. 713 of the Deed Records of Van Zandt County, Texas.

(3) Warranty deed from F. M. McClure to William Stedman, dated November 11, 1862, filed for record January 20, 1863, and recorded in Vol. K, p. 192 of the Deed Records of Van Zandt County, Texas.

(4) Warranty deed from William Stedman to Nathan G. Bagley, dated May 3, 1872, filed for record June 2, 1915, and recorded in Vol. 113, p. 586 of the Deed Records of Van Zandt County, Texas.

(5) Deed from N. G. Bagley to Williams & Bonner, dated January 15, 1873, filed for record June 2, 1915, and recorded in Vol. 113, p. 584 of the Deed Records of Van Zandt County, Texas.

(6) Warranty deed from Chas. D. Bonner, executor, and Mary D. Bonner, executrix, estate of T. R. Bonner, dec'd, to Tyler Building & Loan Association, dated April 18, 1892, filed for record June 2, 1915, and recorded in Vol. 113, p. 593, Deed Records of Van Zandt County, Texas.

(7) Warranty deed from E. C. Williams to John Durst, dated March 15, 1896, filed for record April 17, 1896, and recorded in Vol. 53, page 158, Deed Records of Van Zandt County, Texas.

(8) Warranty deed from John Durst to C. B. Epes, dated August 1, 1896, filed for record Dec. 1, 1896, and recorded in Vol. 53, p. 603 of the Deed Records of Van Zandt County, Texas.

(9) Warranty deed from C. B. Epes to Tyler Building and Loan Association, I.

Cohen and George H. Davidson, dated November 15, 1898, filed for record January 25, 1899, and recorded in Vol. 59, p. 624, of the Deed Records of Van Zandt County, Texas.

(10) Warranty deed from Geo. H. Davidson and I. Cohen to Tyler Building and Loan Association, dated February 8, 1900, filed for record November 10, 1902, and recorded in Vol. 72, p. 281 of the Deed Records of Van Zandt County, Texas.

(11) Warranty deed from Tyler Building & Loan Association to Alex Sanger, Mrs. Cornelia Sanger, a feme sole, and Sam Sanger, composing the firm of Sanger Bros., a partnership, dated May 24, 1918, filed for record May 31, 1918, and recorded in Vol. 125, p. 525 of the Deed Records of Van Zandt County, Texas.

(12) Power of Attorney from Isaac Sanger, Mrs. Cornelia Sanger, a feme sole, and Alexander Sanger, to each other, dated May 28, 1909, filed for record April 30, 1918, and recorded in Vol. 125, p. 251 of the Deed Records of Van Zandt County, Texas.

(13) Power of Attorney from Sam Sanger to Alexander Sanger, dated April 15, 1918, filed for record April 20, 1918, and recorded in Vol. 125, p. 263 of the Deed Records of Van Zandt County, Texas.

(14) Warranty deed from Alexander Sanger, Cornelia Sanger and Samuel Sanger, as partners of the firm of Sanger Bros., and by Alex Sanger and Samuel Sanger as independent executors of the will of Isaac Sanger, deceased, to Sanger Bros., a corporation, dated December 28, 1918, filed for record February 21, 1919, and recorded in Vol. 129, p. 184 of the Deed Records of Van Zandt County, Texas.

(15) Amendment of charter of Sanger Bros., changing the name to Sanger Investment Company, dated August 23, 1926, filed in the office of the Secretary of State, August 24, 1926, filed for record Dec. 6, 1926, and recorded Dec. 9, 1926, in Vol. 1371, p. 46 of the Deed Records of Dallas County, Texas.

(16) Oil and Gas Lease from Sanger Investment Company to F. E. Lumpkin, dated October 7, 1927, filed for record Nov.

9, 1927, and recorded in Vol. 11, p. 315 et seq., Oil and Gas Lease Records, Van Zandt County, Texas.

(17) Assignment of oil and gas lease from F. E. Lumpkin to Humble Oil & Refining Company, dated October 15, 1927, filed for record Nov. 9, 1927, and recorded in Vol. 176, p. 466 of the Deed Records of Van Zandt County, Texas.

(18) Assignment of oil and gas lease from Humble Oil & Refining Company to Gulf Production Company, dated December 28, 1929, filed for record February 7, 1930, and recorded in Vol. 199, page 28 et seq. of the Deed Records of Van Zandt County, Texas.

About 1860, R. W. Berry and his wife moved off the John Walling Survey but lived within a few miles of this land the remainder of their lives. He died in 1883 and his wife died about two years later. The evidence shows that after the year 1861 R. W. Berry did not render any property in the John Walling Survey for taxation and never paid any taxes on any land in said survey, while he did render property in other surveys and paid taxes thereon. Since 1861 this property was rendered for taxes each year with a very few exceptions in the name of the record owners and the taxes were paid by said record owners, but in a few instances after they had become delinquent. There is evidence that while living in the community where this land is located, he nor his wife never made any claim to the property or had anything to do with it whatever, but there is evidence to the effect that they did not make any claim to the property. On October 1, 1883, and after the death of R. W. Berry, his surviving widow, Mahulda Berry, and their children executed a power of attorney to their son, S. P. Berry. This instrument authorized S. P. Berry to collect and receipt for all sums of money due the estate of said R. W. Berry, and further empowered him as their attorney in fact to covenant, grant, bargain, sell and convey to any purchaser or purchasers "all of the right, title and interest that we have in and to all personal property and in and to all real estate, consisting of 175 acres of land more or less out of the Robert Giles Survey of land situated in said Van Zandt County which we own and hold by virtue of being heirs at law of said R. W. Berry, deceased." The said S. P. Berry sold the 175 acres in the Robert Giles Survey. He also, acting under the power of attorney, executed a release of vendor's lien which R. W. and Mahulda Berry had reserved when they conveyed 272 acres out of the Robert Giles Survey.

The evidence further shows that almost if not all of the heirs of R. W. and Mahulda Berry were born and reared in the general vicinity of this land, and many of them lived there all of their lives. None of said heirs at any time ever rendered the land for taxes or paid any taxes on the same and made no claim whatsoever to the land. In fact, none of the heirs ever knew of any claim if any they had, or thought of making any claim thereto until oil was being or about to be produced upon said land, and for about 70 years there was no claim asserted to this land by R. W. Berry, his wife or their heirs. In September, 1929, a man by the name of G. E. Mook called the Berry heirs together and told them that R. W. and Mahulda Berry at one time owned the land in question and that the records failed to show any deed conveying the same out of the said R. W. and Mahulda Berry and that he thought he could recover the land for them. In September, 1929, the heirs executed to said G. E. Mook a power of attorney, authorizing him to employ counsel and proceed to do whatever he could in his power to recover the land, and to compromise upon any terms he saw fit, the said power of attorney to continue for one year or so long as any litigation concerning said land was pending. A large number of the heirs appeared at this meeting, and in order to expedite the proceeding and to prevent the necessity of having to take up all the details with each individual heir, they appointed a committee from the group to represent them in working with the said Mook and in securing counsel and in all other things pertaining to the matter involved.

Within one year from the date of the power of attorney one suit was filed for the recovery of part of the land, and in a short time two other suits were filed. This land,

up to 1917 or 1918, was what is called "open land" and unfenced, and none of the record owners took actual possession of it until Sanger Bros. had it fenced sometime in 1918; but the evidence is indefinite as to the length of time the fence stood up and remained in a state of reasonably good repair, but not more than a few years.

In January, 1932, a settlement agreement between the defendants, Mook and the committee was reached, by the terms of which plaintiffs were to receive $5250.00, and in consideration for the same the plaintiffs were to execute certain deeds and permit judgments to be entered against them in the three suits that were then pending. On January 14, 1932, G. E. Mook, individually and for the Berry heirs, executed a deed and an assignment to R. M. Rowland, the purpose of which was to convey and assign all of the interest in the land and chose in action that Mook and the heirs possessed. Said settlement agreement was adopted, ratified and confirmed by the committee representing the heirs by an instrument signed and duly acknowledged by them. Judgments were entered in the three suits against all of the appellants. All three of the judgments were approved by Mook and appellants' attorney. The appellants executed deeds to Sanger Investment Company and R. M. Rowland, conveying all their title and claim to the land in controversy, and each one accepted his or her proportionate part of the settlement. Rowland transferred his interest on July 22, 1932, to the Humble Oil & Refining Company, and Humble Oil & Refining Company conveyed to Sanger Investment, subject to lease of Humble and Gulf, by instrument dated July 25, 1932.

In April, 1934, a trespass to try title suit was filed in Cause No. 6174 by certain parties against Humble Oil & Refining Company, Sanger Investment Company and Sanger Bros., as defendants, but none of the appellants were made parties either plaintiffs or defendants in the suit at that time, and did not become parties until August 18, 1934, when plaintiffs filed an amended petition in said cause, in which they listed as defendants Humble Oil & Refining Company, Sanger Investment Company, Sanger Bros., Gulf Production Company, T. C. Berry, Mrs. M. A. Berry, A. J. Berry and Mrs. Naomi McMahon and husband, S. C. McMahon. On the same date Mrs. Lula Baker, with several of the appellants and others, filed in said suit a petition, styling themselves as intervening plaintiffs, in which they complained of defendants, Humble Oil & Refining Company, Gulf Production Company, Sanger Investment Company, Sanger Bros., T. C. Berry, Mrs. M. A. Berry, A. J. Berry, Mrs. Naomi McMahon and husband, S. C. McMahon, and others.

On January 11, 1936, an amended petition of intervention was filed by Mrs. Lula Baker and others, in which they complained of and listed as defendants, besides the corporations heretofore mentioned, Mrs. McMahon and husband, A. J. Berry, T. C. Berry, Mrs. M. A. Berry, and others.

On October 2, 1944, appellants filed in said cause an amended petition, again styling themselves as intervening plaintiffs. In this petition A. J. Berry, Mrs. Naomi McMahon and husband, S. C. McMahon, the heirs of T. C. Berry, deceased, the heirs of U. M. Mayne, deceased, and heirs of David Large, deceased, came in for the first time as plaintiffs in said cause.

In the original and amended petitions of intervention filed August 18, 1934, and January 11, 1936, U. M. Mayne, E. B. Mayne and David Large were joined as pro forma plaintiffs and asked for no affirmative relief in their own behalf. Also, in the original and amended petitions of intervention filed in 1934 and 1936, appellants sought to have the judgments that were rendered and the deeds that were executed in carrying out the compromise settlement set aside and cancelled, and also made attacks upon the Mook power of attorney by reason of certain acts of fraud and irregularities alleged to have been perpetrated and for which the defendants should be held responsible. In their amended petition filed on October 2, 1944, no attack was made upon either the power of attorney, the judgments or deeds, and they sought no relief by reason of the invalidity, if any, of said power of attorney, judgments or deeds, but abandoned that part of their cause of action in that amendment.

On July 5, 1946, appellants filed an amended petition, in which they again attacked the Mook power of attorney, judgments and deeds, as alleged in their original and amended petitions of intervention filed in 1934 and 1936.

The appellees filed a plea of not guilty, and also pleaded the Mook power of attorney and deed to Rowland, the deeds to Sanger Investment Company and Rowland, and the judgments. They also pleaded the four, five and ten years statutes of limitations, etc.

At the conclusion of the evidence the court gave an instructed verdict against the appellants. Hence this appeal.

Appellants say that the trial court committed reversible error in several respects in instructing the jury to return a verdict against them.

■ There is no rule of law better settled than the one that requires the issues of fact in jury trials to be submitted to the jury, and it is the duty of the court to do so unless the facts are such that reasonable minds cannot differ as to the ultimate conclusion to be reached. In passing upon the question of whether an instructed verdict should be given, the court must disregard all contradictory evidence in favor of the one seeking the instruction, and must take all the evidence in favor of the opposite party as true and give it the most favorable construction and the benefit of all reasonable inferences. If the court, after having done so, is of the opinion that reasonable minds cannot differ as to such ultimate conclusion, then it becomes his solemn duty to give the peremptory instruction. Franzetti v. Franzetti, Tex.Civ.App., 120 S.W.2d 123; Dallas Joint Stock Land Bank of Dallas v. State ex rel. Cobb, Tex.Civ.App., 133 S.W.2d 827; Cory v. National Casualty Co., Tex.Civ.App., 120 S.W.2d 833.

Appellees advance several reasons why they say it was the duty of the court, under the facts of this case, to peremptorily instruct the jury for them, some of them being: (1) That the deed from Walling to R. W. Berry was fatally defective as to the description of the property sought to be conveyed; (2) that whatever title, if any, appellants and their ancestors had to the land in controversy passed out of them long prior to the date of the filing of this suit; (3) that appellants could not recover in this cause by reason of the deeds executed by them and on account of the judgments rendered against them in the three suits in the district court of Van Zandt county; and (4) that the appellants' claim, if any they ever had, was barred by the four, five and ten years statutes of limitations. In making final disposition of this appeal we do not deem it necessary to discuss more than two or three of the propositions involved herein, and those are the legal effect of the deeds executed by appellants and the judgments rendered against them, and the statutes of limitations.

The appellants are listed under three designations: the Berry intervening plaintiffs, the Mayne intervening plaintiffs, and the Kirkpatrick intervening plaintiffs.

■ In order for a party to set aside an apparently valid judgment on the ground of fraud, accident or mistake, which was rendered at a previous term of court, the burden is upon the petitioner to show that the same was not rendered by any negligence on his part, and also to show that he was not guilty of negligence in failing to move for a new trial during the term at which it was rendered. 25 Tex.Jur., sec. 240, pp. 665 and 666; Moore v. Moore, Tex.Civ.App., 259 S.W. 322, 325, point 1. In the Moore case the opinion was written by the late Chief Justice Gallagher of this court, and in passing upon this question he had this to say:

"In order for the representations complained of by appellant to amount to actionable fraud sufficient to support this equitable action to set aside said judgment after the adjournment of the term at which it was rendered, he must show affirmatively that such representations were made as to existing facts, that they were false, that he was ignorant of such falsity and believed and relied on them, and that by reason of such belief and reliance he failed to appear and contest such suit, *and that he did not discover that he had been deceived until too late to move for a new trial dur-*

*ing the term at which such judgment was rendered.* He must further show that his failure to appear and contest such suit was not the result in whole or in part of his own negligence." (Italics ours.)

He cited: 26 C.J., p. 1062, § 6; 37 C.J. S., Fraud, § 3; Merrill v. Roberts, 78 Tex. 28, 30, 14 S.W. 254; Weaver v. Vandervanter, 84 Tex. 691, 693, 19 S.W. 889; Bryorly v. Clark, 48 Tex. 345, 352.

By reason of the various relationships the different parties bear to this case, it will be necessary to discuss almost each party's status individually.

■ A. J. Berry executed a power of attorney to said Mook. This power of attorney, executed to Mook by all the heirs, authorized Mook to employ counsel to institute suit for them in their name for the recovery of the land, and to secure for them any of their rights pertaining thereto. It also authorized him to compromise, settle or adjust their interest in any manner and upon such basis as he, the said Mook, might deem to be for the best interests of appellants. Under such authority Mook employed counsel and three trespass to try title suits were filed in the district court of Van Zandt county, and the said A. J. Berry was a party plaintiff in each of those suits. A compromise settlement was made between Mook and the defendants which was approved by the committee. Judgments were entered against all of the appellants and deeds executed. A. J. Berry accepted his portion of the settlement money believing that it was in full settlement of any rights that he had. His testimony concerning his execution of the deed to Sanger Investment Company and Rowland is that he did not sign a deed but that it was only a blank piece of paper that he signed, and that he did not know anything about the suits and judgments on the date that they were rendered and that he could not tell the date that he first learned of them. That is all the information he gave the court concerning his knowledge of their rendition. He did not inform the court as to whether it was during the term at which they were rendered or after the term had expired when he learned of them. A party will not be permitted to set aside a judg-

ment of the court which is apparently valid and rendered at a previous term on such meager testimony. It was his duty and burden to prove that he did not know of their rendition during the terms at which they were rendered, or if he did know before the expiration of the terms that they had been rendered against him, that he was not negligent in any manner in not moving for a new trial during the terms at which they were rendered. This he wholly failed to do but contented himself with saying that he could not tell the date when he first obtained such knowledge. In fact, he made no attacks upon the judgments until the amendment of July 5, 1946. We are of the opinion that he failed to meet the requirement as to the burden of proof as laid down by the authorities heretofore cited, and for that reason he is bound by the judgments.

■ We are also of the opinion that the claim of said A. J. Berry is barred by the four, five and ten years statutes of limitations. He knew in 1929 that some of the defendants were in actual possession of this land and claiming adversely to the Berry heirs, and were prospecting for oil at that time. They have remained in adverse possession ever since they began operations. He was listed as a defendant in the amended pleading and in the original plea of intervention filed on August 18, 1934, and he was served on August 21, 1934, with citation on both of said pleadings. He was also named as a defendant in the amendment of January, 1936, and did not appear as plaintiff to ask for affirmative relief until October 2, 1944. We conclude that the said A. J. Berry's claim is barred by the four, five and ten years statutes of limitations by reason of his failure to come into court and ask for affirmative relief.

■ Mrs. Naomi McMahon and husband, S. C. McMahon, executed the power of attorney to Mook. They were named as plaintiffs in each of the three suits filed in the district court of Van Zandt county and judgments were rendered against them in each of said suits. They signed the deed to Sanger Investment Company and Rowland, but denied going before a Notary

Public to have their acknowledgments taken. They accepted their portion of the settlement money knowing that it was all that they were supposed to receive and believing that the same was in full settlement of any interest they had. They knew that the defendants, or some of them, had been in actual possession and claiming this land since before September 22, 1929, when they executed the Mook power of attorney. They were listed as defendants in the original petition and plea of intervention filed August 18, 1934, and were served with citation on each of said pleadings on August 20th and 21, 1934. They were also listed as defendants in the amendment of January, 1936, and the first time they appeared as plaintiffs or asked for any affirmative relief was in the amendment of October 2, 1944, but waited until July 5, 1946, for the first time to make an attack upon the judgments. They have offered no excusable reason for waiting more than thirteen years to question the validity of said judgments, and having failed in this respect, they are bound thereby.

○ ■ We are of the opinion that the mere fact that some of the applicants filed suit on August 18, 1934, in which they sued for the land in question and also set up the alleged invalidity of the power of attorney, deeds and judgments, in which pleading the McMahons were listed as defendants only, would not toll the statutes of limitations as to them. They waited until October 2, 1944, to come into court and ask for affirmative relief in their own behalf, knowing since 1929 that the defendants were in possession and claiming the land adversely to them, and by reason of such delay in prosecuting their claim, they are barred by the five and ten years statutes of limitations.

■ T. C. Berry, now deceased, executed the power of attorney to Mook. He was one of the committee appointed by the other heirs. He appeared as plaintiff in the three district court suits. As a member of the committee he approved and ratified the settlement agreement. He executed a deed in carrying out the agreement and judgment was rendered against him. There is no evidence throwing any light upon the circumstances under which he executed the deed to Sanger Investment Company and Rowland, and no testimony evidencing any fraud perpetrated upon him. So he was bound by the deed executed by him and the judgments rendered against him. He died on Christmas Day, 1936. He was also a defendant in the pleadings filed on August 18, 1934. He was served with citation on said pleadings. He was also named as defendant in the amendment of January, 1936. He never became a plaintiff nor asked for affirmative relief during his lifetime. His heirs became parties plaintiff in the amendment filed on October 2, 1944, in which they asked affirmative relief for the first time. The statute of limitations had already been put in motion against the said T. C. Berry during his lifetime. His death could not toll said statute for a period of time longer than one year, so if he had not already been bound by the deed he executed and the judgments rendered against him, his heirs were certainly barred by the five and ten years statutes of limitations on October 2, 1944.

■ E. B. Mayne executed the power of attorney to Mook, in which he authorized the filing of the three suits in the district court. He was a party plaintiff in each of them and was a party to the judgments rendered therein. He executed and acknowledged the deed to Sanger Investment Company and Rowland on January 27, 1932. He accepted his portion of the money and was told by his lawyer at the time he accepted it that it would be all that he would get, and he signed said deed in the belief that it was in full settlement of any rights or interest he had in the land in question. He said that he executed the deed on account of misrepresentations made to him by his counsel, but there is no evidence in this record connecting any of the appellees with said misrepresentations, if any were made. The deed that he executed to Sanger Investment Company and Rowland was executed on January 27, 1932, and it, as well as all the deeds executed by all the heirs, contained these provisions:

"To R. M. Rowland, all of our right, title, claim and interest in and to all other lands or any part thereof, situated or lo-

cated in the John Walling and William Daniel Leagues, in said two counties, which we, or any of us may have any right, title, claim and interest to .by being an heir or heirs of R. W. Berry, deceased, and wife, Mahulda Berry, deceased and/or of any of their heirs or descendants.

"And for this same consideration, we do hereby ratify, confirm and acknowledge two certain deeds this day executed and delivered by G. E. Mook as our Agent and Attorney in Fact, and individually, to the herein named grantees to the above described tracts or parcels of land.

"And for the same consideration, we do hereby bargain, grant, sell and assign all of our choses in action, claims and interest in and to all of said lands to said grantees, for any damages or any other claim that said grantors herein may be entitled to by virtue of being an heir of the said R. W. Berry, deceased, and wife, Mahulda Berry, deceased, and/or of any of their heirs or descendants, insofar as the same may relate to said Walling and Daniel Leagues.

"And for the same consideration, we also ratify and confirm judgments that have been entered in the District Court of Van Zandt County, Texas, in three suits wherein we are plaintiffs and Sun Oil Company, Sanger Investment Company and Humble Oil & Refining Company are defendants, among others, numbered 5738, also ratify and authorize judgments to be entered in suits that may be filed by our said Agent in their name on all of the land herein conveyed, divesting the interests conveyed herein."

E. B. Mayne claimed that he did not read the deed and did not know anything about the judgments and did not intend to relinquish and convey his rights and interest to Sanger Investment Company and Rowland when he executed the deed; but regardless of whether or not he read the deed or understood its provisions, he bound himself thereby when he executed it. The evidence showed that he was laboring under no handicap that would prevent him from reading the same; that he did not request it to be read, and that he could have read it or had it read to him if he had so desired. So we think it is too late at this time for him to say that he is not bound by his own solemn act in executing the same.

Another reason why we think he cannot prevail in this case is that he was put on notice of the judgments when he signed said deed. At that time two of them had already been rendered as of January 19, 1932, and the other was rendered on May 3, 1932. The first time any of the appellants filed a suit or petition in court attacking said deeds or judgments was on the 18th day of August, 1934, and said Mayne appeared then only as a pro forma plaintiff and asked for no affirmative relief for himself. On October 2, 1944, they amended their pleadings, in which all allegations concerning the invalidity of the deeds and judgments were omitted, thereby abandoning that part of their cause of action, and they did not re-assert the same until the filing of the amendment of July 5, 1946, when they again repleaded their attacks upon them. Two years, seven months and twenty-one days elapsed between January 27, 1932, the date he signed the deed, and August 18, 1934, when any of the heirs, for the first time, filed in court any complaint in reference to the settlement, deeds and judgments; and twenty-seven months and fifteen days transpired from May 3, 1932, the date of the last judgment, to August 18, 1934; and twenty-one months and three days transpired between October 2, 1944, the date appellants filed their amended pleading in which they did not include any allegation questioning the deeds or judgments, to July 5, 1946, the date they amended their pleading, in which they attempted to revive their attack upon them. So there was a period of more than four years that existed from the date of the judgments and the filing of the amendment on July 5, 1946, that there was no claim on the part of the appellants that said judgments and deeds were invalid for any reason. As heretofore stated, a suit to set aside a judgment apparently valid and which was rendered at a former term, on the ground of fraud, accident or mistake, must be brought within four years from the date of its rendition, or the petitioners must allege and prove an excusable

reason for not having done so, in order to overcome a plea of limitation. The only excuse pleaded for not filing suit sooner was that he did not know about the judgments being rendered, and the only reason that he gave in his testimony was that it was three months after their rendition before he knew of them. As heretofore set out, he signed the deed in which he agreed to and ratified the judgments, and was put on notice at that particular time, and if it could be said that he really did not know about them, he should have known it and he was negligent as a matter of law in not learning of same on said date if in fact he did not know of the same. He permitted more than twelve years to elapse between January 27, 1932, and October 2, 1944, before he appeared as plaintiff and sought affirmative relief in his own behalf. We do not believe the fact that he appeared only as a pro forma plaintiff in the plea of intervention filed on August 18, 1932, and subsequent amendment in which he asked for no affirmative relief whatever in his behalf, would toll the statute of limitations as far as he is concerned, but if it should be held that it would toll said statute, when they filed their amendment of October 2, 1944, abandoning their attack upon the deeds and judgments, limitation began to run again and ran until July 5, 1946, which was twenty-one months and five days; and this, added to the twenty-seven months and fifteen days which was the time before any suit was filed, would be more than four years. The law is that when a cause of action is dismissed or abandoned, the statute of limitations begins to run until it is again repleaded. Shirley v. Waco Tap R. Co., 78 Tex. 131, 10 S.W. 543, points pp. 551 and 552; Griffith v. Associated Employers' Reciprocal, Tex.Civ.App., 10 S.W.2d 129; Rule 65, T.R.C.P. Therefore, we are of the opinion that said E. B. Mayne is bound by the judgments rendered against him.

U. M. Mayne, now deceased, executed a power of attorney to Mook. He was plaintiff in the three district court suits. He was a party to the judgments entered therein. He executed the deed to Sanger Investment Company and Rowland. There is no testimony throwing any light upon the conditions under which he executed the power of attorney and deeds or any facts concerning any fraud perpetrated upon him in the rendition of the judgments. So we conclude that he bound himself by the deed and was bound by the judgments during his lifetime, and that his heirs are now estopped to claim under him.

We believe that his heirs are also barred by the five and ten years statutes of limitations. U. M. Mayne died in 1934. He was named as a pro forma plaintiff in the two pleadings filed on August 18, 1934, in these words: "Mattie Mayne, joined pro forma by her husband, U. M. Mayne." He never became plaintiff in said suit nor asked for any affirmative relief during his lifetime. His heirs were made parties plaintiff to the suit and asked for affirmative relief for the first time on October 2, 1944. The statute of limitations had already been put in motion against the said U. M. Mayne during his lifetime and the statute continued to run until the amendment of October 2, 1944, and could not be tolled by reason of his death for a longer period than one year; so if U. M. Mayne had not bound himself during his lifetime his heirs would be barred by the five and ten years statutes of limitation.

Appellants contend that E. B. Mayne, U. M. Mayne and David Large, by appearing as pro forma plaintiffs, tolled the statutes of limitations as to them. They appeared in the original petition filed on August 18th and in all amendments filed subsequent to October 2, 1944, as pro forma plaintiffs, and neither of them or their heirs asked for any affirmative relief for themselves until the 1944 amendment. Prior to said amendment they appeared in the petition in this manner: "Mamie Mayne, joined pro forma by her husband, E. B. Mayne; Mattie Mayne, joined pro forma by her husband, U. M. Mayne; and Mary Large, joined pro forma by her husband, David Large." The husband is an indispensable party to a suit brought by the wife involving her rights to her separate property, or she must plead and prove some exception before she can maintain her suit without his joinder; but the wives of these appellants were neither necessary nor proper parties to this suit and they could not

maintain a suit for the recovery of their husbands' separate estate. The husbands were the only ones that could institute and prosecute the same, and we are of the opinion that the husbands could not do so by appearing only in the capacity of pro forma plaintiffs and asking for no affirmative relief in their own behalf. The law requiring the joinder of the husband in his wife's suit involving her separate estate, he joins simply to meet that requirement and only as a matter of form, and does not become a real plaintiff but only a nominal party in the case and is not personally bound by the judgment rendered therein. As such pro forma plaintiff he asks for nothing, he gives no notice of any claim he might have in his own right, and he is therefore not entitled to recover anything in his own behalf. Wade v. Wade, 140 Tex. 339, 167 S.W.2d 1008; Missouri-K.-T. Railroad Co. v. Starr, 22 Tex.Civ.App. 353, 55 S.W. 393; Davis v. First Nat. Bank, 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1; Kirby v. Houston Oil Co., Tex.Civ.App., 200 S.W.2d 246; Paschall v. Owen, 77 Tex. 583, 14 S.W. 203. We are of the opinion that the appellants appearing only in the role of pro forma plaintiffs would not toll the statute of limitations.

 R. Kirkpatrick executed the power of attorney to Mook and a deed to the Sanger Investment Company and Rowland. He acknowledged the deed before a Notary Public. He had his kinsman, Thomas Berry, to read the deed to him three times. He accepted his portion of the money with the thought in mind that that amount would be all he would ever receive and that the same was in full settlement of any rights he had in the land. He was a party to the three judgments. In the deed which he signed he authorized and confirmed the rendering of the same. There is no testimony of any fraud or overreaching on the part of anyone in this connection. So we are of the opinion that he is bound by his deed and also by the judgments rendered against him. He has shown no excusable reason why he permitted more than four years to pass during which time there was no claim on his part that said deeds and judgments were invalid.

J. W. Hall was one of the plaintiffs who became a party and asked for affirmative relief on August 18, 1934. He signed a power of attorney to Mook. He was a party plaintiff in each of the three district court suits and was a party to each of the judgments. He executed a deed to Sanger Investment Company and Rowland and there is no testimony to throw any light upon the conditions under which he executed said power of attorney or deed, or under which the judgments were rendered against him. So we conclude that he is bound by the deeds and the judgments.

David Large, now deceased, was only a pro forma plaintiff. He never became a plaintiff and asked for affirmative relief in his own behalf. His heirs became parties plaintiff and asked for affirmative relief for the first time on October 2, 1944. He signed the Mook power of attorney and executed a deed to Sanger Investment Company and Rowland. He was a plaintiff in each of the three suits filed in the district court and was a party to the judgments rendered therein. We have not been referred to any testimony and we have not found any to the effect that he was misled or overreached or that he did not know of the judgments at the time they were rendered. Therefore, said deeds and judgments were binding upon the said David Large and are now binding upon his heirs.

Mrs. Narcissus Henderson (nee Mrs. R. L. Jones) and husband, A. A. Henderson, attended a meeting of the heirs, at which she signed the Mook power of attorney. At this meeting the heirs formed a committee to look after the interests of the heirs. She was a party plaintiff in the three district court suits and a party to the judgments. She signed and acknowledged the deed to Sanger Investment Company and Rowland, in which she confirmed the Mook deed and agreed to the judgments that were rendered against her. She accepted her portion of the money in the belief that it was in full settlement of any and all of her rights in the property. She testified to no fraudulent or overreaching representations of any sort made by the appellees. She just says that she did not know of the rendition of the judgments

when she signed and acknowledged the deed, but the deed which she signed in the presence of her own lawyer and in the presence of one of her co-plaintiffs gave her such information. She is presumed to have acquired such information at that time, but if it could be said that the deed had not imparted to her the facts concerning the judgments, she nowhere testified when or where she received notice of their rendition, whether it was the next day or whether it was two years thereafter. The record is absolutely silent as to when she obtained such information. More than four years elapsed during which time there was no pleading to affect the validity of the judgments or deeds. The judgments were apparently valid. The burden was on her to show by some reasonable excuse why she permitted more than four years to transpire during which time their validity was not being questioned. From the date of their rendition or from the date that she signed said deed to August 18, 1932, when they were first questioned, and between October 2, 1944, when appellants filed their trial amendment, in which they abandoned their claim of invalidity of said judgments and deeds, and July 5, 1946, when they reasserted their attack, constituted more than four years during which time there was no attack being made upon the deeds or judgments. This burden, we think, she failed to meet.

Mrs. Nannie Herron and husband, J. D. Herron, attended the meeting of the heirs and signed the power of attorney at said meeting, but she says that no one took her acknowledgment. With her approval and acquiescence a committee of the heirs was appointed at this meeting, as she says, so that Mook could transact business with the committee instead of taking the matters up individually with all the heirs and to get things started, suits filed, etc. She was a party plaintiff in the three district court suits and a party to the judgments. She and her husband executed a deed to the Sanger Investment Company and Rowland and she says again that they failed to take the acknowledgment to the deed. She says that when she signed the deed she did not know anything about the judgments, but she failed to give the court any information as to when she did learn of their rendition or any excuse for not filing suit sooner, nor why that part of her cause of action was abandoned in the appellants' trial amendment of October 2, 1944. So what we have said concerning Mrs. Henderson in this respect applies with equal force and effect to Mrs. Herron.

■ Appellants contend that Sanger Bros., being a corporation chartered for the purpose of conducting a wholesale and retail mercantile business, with its domicile in Dallas County, Texas, could not acquire land in Van Zandt County, Texas, by limitation; that to do so would be contrary to the law and against public policy. To this proposition we cannot agree. As we understand the law, a corporation can acquire land by purchase, limitation, or in any other manner that anyone else can, and when once acquired, appellants and no one else has the right to question their possession or authority to hold the same, except the State of Texas. Webster v. International & G. N. RR. Co., Tex.Civ.App., 193 S.W. 179, error refused; Kirby v. Pitchfork Land & Cattle Co., 61 Tex.Civ. App. 229, 129 S.W. 1151, error refused; 2 C.J.S., Adverse Possession, § 6, p. 518, Burnham v. Hardy Oil Co., Tex.Civ.App., 147 S.W. 330, affirmed 108 Tex. 555, 195 S.W. 1139; Myers v. McGavock, 39 Neb. 843, 58 N.W. 522, 42 Am.St.Rep. 627; Russell v. Texas & P. Ry. Co., 68 Tex. 646, 5 S.W. 686; Schneider v. Sellers, 98 Tex. 380, 84 S.W. 417, 420; Texarkana & Ft. S. Ry. Co. v. T. & N. O. Ry. Co., 28 Tex.Civ. App. 551, 67 S.W. 525; Buchanan v. H. & T. C. R.R. Co., Tex.Civ.App., 180 S.W. 625.

Finding no reversible error, the judgment of the trial court is therefore affirmed.